UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LIONEL L.L.C., et. al. | Civil Index No.<br><br>Chapter 11 Case No.:<br>04-17324 (BRL)<br><br>(Jointly Administered) |
| LIONEL L.L.C.,<br><br>                         Plaintiff,<br><br>-against-<br><br>K-LINE ELECTRIC TRAINS, INC., MDK INC., MAURY KLEIN, ROBERT GRUBBA,<br><br>                         Defendants. | Adversary Proceeding No.<br>05-02337 (BRL) |

**DECLARATION OF CELESTE M. BUTERA**
**IN SUPPORT OF THE MOTION TO WITHDRAW THE REFERENCE**

Celeste M. Butera declares under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I am a member of Rivkin Radler LLP, attorneys for defendants MDK, Inc. d/b/a K-Line Electric Trains ("MDK"), Maury Klein, and Robert Grubba (collectively "Defendants") in *Lionel L.L.C. v. K-Line Electric Trains Inc., et al*, Adversary Proceeding No. 05-02337 (BRL) which is pending in the bankruptcy case *In re Lionel, L.L.C., et al.*, Case No. 04-17324 (BRL)(the "Adversary Proceeding").

2. On November 15, 2004, Lionel L.L.C. and Liontech Company (collectively the "Debtors") filed Chapter 11 voluntary bankruptcy petitions in the bankruptcy court for the

Southern District of New York ("Bankruptcy Court"). The cases were assigned to United States Bankruptcy Judge Burton R. Lifland.

3. By Order of the Bankruptcy Court, both cases were procedurally consolidated for joint administration on November 16, 2004.

4. No trustee has been appointed and the Debtors are acting as Debtors-in Possession.

5. Defendants have not filed a proof of claim in the Debtors' bankruptcy cases.

6. On July 27, 2005, Lionel, L.L.C. ("Plaintiff") commenced the Adversary Proceeding against the Defendants claiming, inter alia, violations of federal copyright law and trade secret law. Plaintiff subsequently filed and served a First Amended Complaint on the defendants on or about August 8, 2005. See Plaintiff's First Amended Complaint attached hereto as Exhibit "A". The Defendants' time to answer the First Amended Complaint has been extended to September 1, 2005.

7. On July 27, 2005, the Plaintiff also moved by Order to Show Cause seeking a preliminary injunction enjoining the Defendants from, inter alia, manufacturing, distributing, marketing, or selling products containing the alleged protected technology in question. See Order to Show Cause attached hereto as Exhibit "B".[1]

8. On August 4, 2005, Defendants filed a memorandum of law and declarations in opposition to Plaintiff's application for a preliminary injunction. See documents in opposition to Debtor's Order to Show Cause attached hereto as Exhibit "C".

---

[1] The supporting documents to the Order to Show Cause were filed under seal with the Bankruptcy Court and have not been annexed to these moving papers.

9. On August 5, 2005, Defendants moved by Order to Show Cause for expedited discovery with respect to Plaintiff's request for preliminary injunctive relief. Thereafter, the Plaintiff filed opposition papers to Defendants' motion for expedited discovery.

10. The return date for both the Plaintiff's motion for a preliminary injunction and the Defendants' discovery motion was August 9, 2005. Both motions were rendered moot as a result of a settlement placed on the record and "so ordered" by the Bankruptcy Court on August 9, 2005.

11. At the August 9, 2005 hearing and before the Bankruptcy Court issued any rulings, all parties agreed to settle the Adversary Proceeding on the record (the "Settlement Agreement"). See transcript of August 9, 2005 Hearing at 19-33 attached hereto as Exhibit "D". The Settlement Agreement was "so ordered" by Judge Lifland on the record on August 9, 2005. See id.

12. On August 9, 2005, the Bankruptcy Court issued an order directing the parties "to submit implementing and supplementing documentation and orders consistent with the terms of the agreed-upon settlement." See Minutes of Proceeding dated August 9, 2005 attached hereto as Exhibit "E".

13. It is the Defendants' position that they have fully and completely complied with the Settlement Agreement, they are not in default of the Settlement Agreement and that the Settlement Agreement is a legally binding obligation of the Plaintiff and the Defendants.

14. The Settlement Agreement included Defendants' agreement to entry of a permanent injunction, on consent, which enjoined the Defendants from making or selling any products containing the Lionel technology at issue to be effective on January 31st, 2006.

15. On August 10, 2005, the Plaintiff issued a press release with respect to the Settlement Agreement and its terms. Thereafter, the Defendants issued their own press release to address certain inaccuracies in the Plaintiff's press release.

16. On August 11, 2005, Plaintiff's counsel sent a letter to Defendants' counsel alleging that Defendants breached the Settlement Agreement by virtue of alleged inaccurate statements made in Defendants' press release. The Plaintiff further informed Defendants that unless the Defendants immediately retracted their press release the Plaintiff would seek to vacate the Settlement Agreement.

17. Plaintiff sent a similar letter to the bankruptcy court advising Judge Lifland of the Defendants' press release and alleged breach of the Settlement Agreement and requested a conference concerning the same.

18. By letter dated August 12, 2005 Defendants denied they had breached the terms of the Settlement Agreement. Nevertheless, in an effort to minimize further cost and in the interest of judicial economy, Defendants responded to Plaintiff's concerns by agreeing to withdraw their press release and issue a new press release reciting the precise terms of the Settlement Agreement as placed on the record. Plaintiff rejected this.

19. On August 12, 2005, Judge Lifland scheduled a conference for August 15, 2005 to address the issues regarding the press releases in response to Plaintiff's request for a conference.

20. At the August 15, 2005 conference the parties agreed to attempt to draft a mutually acceptable joint press release.

21. The Bankruptcy Court also clarified, on consent, whether the Defendants could continue to manufacture the products in question through January 31, 2006. On consent, and subject to the Settlement Agreement being enforced, Defendants agreed to immediately refrain

4

from manufacturing the products.  See Transcript of August 15, 2000 conference, attached hereto as Exhibit "F," at 39-44.

22.     The Bankruptcy Court adjourned the status conference and the hearing on the preliminary injunction to August 24, 2005 to give the parties the time to work out the joint press release and send in the written settlement documents.  The Bankruptcy Court also ordered that the permanent injunction, consented to by the Defendants pursuant to the Settlement Agreement, remain in place until the hearing on August 24, 2005.  See id. at 35-37.

23.     Thereafter, the Plaintiff proposed an order pursuant to the August 15, 2005 Conference entitled "Order Clarifying Proceedings Order".  See "Order Clarifying Proceedings Order" attached hereto as Exhibit "G".

24.     Since the Defendants' consent to the permanent injunction was conditioned upon the case being settled, and without prejudice to the rights of any party in the event that the litigation was to go forward, including the right to contest the bankruptcy court's jurisdiction over the Adversary Proceeding, Defendants reserved their rights with respect to the proposed "Order Clarifying Proceedings Order" with a letter to Judge Lifland stating:

> "With respect to the portion of the order which provides 'and consideration of the proceedings order being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409' we have spoken with counsel for the plaintiff, and the parties have agreed that nothing in this language or order will constitute a waiver or otherwise prejudice the defendants' rights to contest jurisdiction and/or venue in the event a settlement is not effectuated."

See Letter dated August 16, 2005 attached hereto as Exhibit "H".

25.     On August 16, 2005 Judge Lifland entered the "Order Clarifying Proceedings Order".

5

26.     From August 15, 2005 through August 18, 2005, the parties attempted to formulate an acceptable joint press release, revised and exchanged several drafts, and the defendants performed pursuant to the Settlement Agreement.

27.     The Defendants attempted, in good faith and with due diligence, to draft a revised press release in line with the terms of the Settlement Agreement using Defendants' proposed revised press release as a cornerstone, as directed by the Bankruptcy Court at the August 15, 2005 conference. See Exhibit "F" at p. 35. However, the Defendants' suggested revisions were rejected by the Plaintiff almost in their entirety.

28.     On August 18, 2005, after the Defendants would not agree to the Plaintiff's language in the joint press release which went well beyond the consent judgment agreed to on August 9, 2005, as clarified at the August 15, 2005 conference, the Plaintiff informed the Defendants that because of the failure to resolve the press release issue and Defendants' breach of the Settlement Agreement, the settlement was off and Plaintiff intended to proceed with the litigation.

29.     On August 19, 2005, the Defendants submitted a proposed order to show cause to the Bankruptcy Court to enforce the Settlement Agreement, a copy of which with accompanying Memorandum of Law is attached hereto as Exhibit "I." The Bankruptcy Court held a telephonic conference on August 22, 2005, at which the Court denied defendants' motion to enforce the settlement agreement, vacated any injunctive orders entered on consent and issued a temporary restraining order enjoining defendants from "manufacturing , marketing, delivering or selling to customers, any K-Line products containing Lionel's technology, including but not limited to the K-Sounds, Cruise Control and 120 Watt Transformer products at issue." Attached hereto as Exhibit "J" are copies of the Bankruptcy Court's "Memorandum Endorsement Denying Motion

6

to Enforce the Settlement Agreement; and Issuance of Temporary Restraining Order" and "Order Denying Motion for Expedited Discovery." Attached hereto as Exhibit "K" is a copy of the Temporary Restraining Order entered on August 22, 2005.

30. Attached hereto as Exhibit "L" is Defendants' Demand for Jury Trial.

31. The Defendants are seeking an order of the District Court immediately withdrawing the reference pursuant to Bankruptcy Rule 5011 and 28 U.S.C. 157(d) so that the District Court can preside over any and all litigation between the parties in the Adversary Proceeding including the hearing on any preliminary injunction.

32. No prior request for the relief requested herein has been made to this or any other court.

Dated: Uniondale, New York
August 23, 2005

_____
Celeste M. Butera

1881876 v1