**Exhibit D**

1

```
 1
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4
     – – – – – – – – – – – – – – – – – – x
 5
                 In the Matter
 6
                     of              Case No.
 7                                    04-17324
             LIONEL LLC., et al
 8
                     Debtor.
 9   – – – – – – – – – – – – – – – – – – x
10                 August 9, 2005
11                 United States Custom House
                   One Bowling Green
12                 New York, New York 10004
13   Fee applications, Motion to purchase tooling
     manufactured and owned by Sanda Kan Industrial,
14   Ltd., Weiser, LLP- Fee appliacation, K-Line
     Electric Trains Inc., MDK Inc., Maury Klein,
15   Robert Grubba (cc) Orderto Show Cause for
     Preliminary Injunction.
16
17   B E F O R E :
                 HON. BURTON R. LIFLAND,
18                             Bankruptcy Judge.
19
20
21
22
23
24
25
```

2

```
 1                    LIONEL, LLC
 2   A P P E A R A N C E S:
 3
            O'MELVENY & MYERS, LLP
 4             Attorneys for Lionel
               7 Times Square
 5             New York, New York 10036
 6   BY: ADAM C. HARRIS, ESQ.
                    -and-
 7            DALE M. CENDALI, ESQ.
                    -and-
 8            ABBEY WALSH, ESQ.
 9
            O'MELVENY & MYERS, LLP
10             Attorneys for Lionel
               400 South Hope Street
11             Los Angeles, California 90071
12   BY: DAVID P. ENZMINGER, ESQ.
                    -and-
13            RYAN K. YAGURA, ESQ.
14
            RIVKIN RADLER, LLP
15             Attorneys for K-Linem MDK, Klein,
               Grubba
16             EAB Plaza
               Uniondale, New York 11556
17
     BY: MICHAEL P. VERSICHELLI, ESQ.
18                  -and-
              PIA E. RIVERSO, ESQ.
19                  -and-
              CELESTE M. BUTERA, ESQ.
20
21          STEVENS & LEE, P.C.
               Attorneys for Mike's train House
22             485 Madison Avenue
               New York, New York 10022
23
     BY: JOCELYN KEYNES, ESQ.
24
25
```

3

```
 1                         LIONEL, LLC
 2    A P P E A R A N C E S: (Cont'd)
 3
           WEIL, GOTSHAL & MANGES, LLP
 4              Attorneys for Guggenheim Partners
               767 Fifth Avenue
 5             New York, New York 10153
 6         BY:  MICHAEL B. CHAISANGUANTHUM, ESQ.
 7
        HALPERIN BATTAGLIA RAICHT, LLP
 8              Attorneys for Creditors Committee
               555 Madison Avenue
 9             New York, New York 10022
10         BY:  ROBERT D. RAICHT, ESQ.
                    -and-
11              ALAN D. HALPERIN, ESQ.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

```
 1            LIONEL, LLC
 2          P R O C E E D I N G S
 3          MR. HARRIS:  Adam Harris, O'Melveny
 4  and Myers on behalf of Lionel, LLC and its
 5  affiliates, its debtors and debtors in
 6  possession.
 7          Your Honor, we have several matters
 8  on the calendar this morning.  Two of the
 9  matters were originally scheduled, which was
10  the fees application of Chadbourne Parke and
11  Weiser I believe have been adjourned to another
12  date, so they are not on for this morning.
13          I think that was done as a result of
14  Miss Leonard being on vacation this week and
15  the issue they may have in the U.S. Trustee's
16  office.  We do have three other matters.
17          THE COURT:  What issues?  I see the
18  U.S. Trustee's replies.  It only deals with
19  what we euphemistically called a holdback, is
20  that an issue?
21          MR. WALSH:  Your Honor, if I may.
22          THE COURT:  I don't mind adjourning
23  it but usually lawyers are really hot to trot
24  when it comes to fee applications.
25          MR. WALSH:  My understanding there
```

5

1                    LIONEL, LLC

2   are no issues.  They have a consent order with

3   Miss Leonard.  I think they were just seeking

4   to present it to your Honor.  I can speak with

5   them and have them send it to your chambers, if

6   that's okay.

7              THE COURT:  I am not an advocate for

8   them here.  If you're putting it over, it is

9   okay with me.

10             MR. HARRIS:  Your Honor, we are

11  going to put it over because they are not here

12  and I'm not purporting to speak for either

13  Chadbourne or Weiser to say they are not here.

14             If there are no issues remaining,

15  they are submitting an agreed order to the

16  chambers signed by the U.S. Trustee's office

17  and as far as we are concerned that would

18  resolve the matter.

19             We do have three other matters on

20  other than the preliminary injunction hearing

21  this morning.

22             One is the first interim application

23  of O'Melveny and Myers.  Second is the second

24  interim of Dykema and Gossett and the third is

25  the debtor's motion for approval of certain

6

1                        LIONEL, LLC

2    critical vendors payment to Sanda Kan.

3                  Is there any particular order in

4    which your Honor would take them?

5                  THE COURT:  No.

6                  MR. HARRIS:  In this case, why don't

7    I turn the podium to Miss Walsh to present the

8    matters on Dykema and Sanda Kan and I will take

9    it up on O'Melveny's application.

10                  MR. WALSH:  Good morning, your

11   Honor.  The first matter, the Dykema first

12   interim fee application, there was an objection

13   by the U.S. Trustee.  I think Alicia, Miss

14   Leonard, is on vacation this week but she and I

15   did come to resolve the objection and we have a

16   consent order which I have here for you today.

17   If I may submit it.

18                  THE COURT:  I will entertain it.

19                  MR. WALSH:  As you may remember, at

20   this end of April we filed a motion to approve

21   certain critical payments to Sanda Kan

22   Industrial, Ltd., the largest manufacturer of

23   inventory for Lionel.

24                  We sought this relief in order to

25   maintain our relationship with Sanda Kan and

7

1                    LIONEL, LLC

2    because they informed us that based on the size

3    of their prepetition claim they would be unable

4    to maintain the payment terms that we had been

5    operating under for the past year or so, which

6    was pay cash in advance of shipments and they

7    were considering changing that to a cash in

8    advance of order or require us to post

9    substantial amount of security for any orders

10   that we placed.

11             Furthermore, they weren't sure they

12   would commit to maintain the level of

13   manufacturing they were doing for us and

14   currently they are doing 80 percent of our

15   inventory manufacturing.

16             As a result of this, we negotiated

17   in good faith with them and came up with the

18   requested relief.  We submitted the motion.

19             Shortly thereafter the formally

20   disbanded Creditors Committee was

21   reconstituted.  They informed us that they had

22   some objections to the relief requested and we

23   adjourned this hearing for several times over

24   the past few months to allow for negotiation

25   between Lionel, the Creditors Committee and



8

1                      LIONEL, LLC

2   Sanda Kan.

3              As a result of those good faith

4   negotiations, the parties have agreed to a

5   revised form of relief and, actually, if you

6   would like, your Honor, I can back you through

7   the differences between what we originally

8   proposed in our motion and what we are hoping

9   to submit here today.

10              THE COURT:  Please.

11              MS. WALSH:  Initially we proposed to

12   say Sanda Kan $4.7 million out of their $6.7

13   million prepetition claim.  In exchange for

14   that, we would get $5 million of unsecured

15   postpetition trade credit from Lionel.

16              The primary difference in this new

17   order is that Sanda Kan will receive

18   two-and-a-half million dollars of payment

19   spread out about three to four weeks.  In

20   exchange Lionel will receive two-and-a-half

21   million dollars of unsecured post-petition

22   trade credit.  So we see this as a vast

23   improvement.  It is $2 million, more than $2

24   million saving to the estate in cash right

25   now.

9

LIONEL, LLC

1
2      In addition, the Creditors Committee
3 has negotiated to also include in this order
4 certain other provisions that are beneficial to
5 the company.
6      For instance, upon payment in full
7 of the two-and-a-half million dollars in credit
8 in inventory payments, Sanda Kan will have
9 deemed to confirm and acknowledge the debtors
10 will hold title to all tooling inventory in
11 Sanda Kan's possession and control other than
12 new tooling that's currently being proposed by
13 Sanda Kan and don't yet hold title to.
14      Furthermore, they would have been
15 deemed to consented to Lionel's removal of any
16 of the inventory or goods in Sanda Kan's
17 possession at any time in the future and Sanda
18 Kan would have warranted that they will make
19 all payments required to be made by its
20 creditors and any other entity they may deal
21 with in China where their factories are to
22 avoid any of those entities asserting a lien on
23 Lionel's property that is in Sanda Kan's
24 possession.
25      The order further provides that



10

1                    LIONEL, LLC

2    Sanda Kan agrees that the debtor is under no

3    obligation to maintain the current level of

4    production with Sanda Kan and that Lionel

5    agrees to indemnify Sanda Kan for any costs

6    that may be incurred if we do pick up to move

7    our tooling somewhere outside Sanda Kan's

8    facility.

9              Sanda Kan agrees to submit to the

10   jurisdiction of this court for any and all

11   matters that may arise out of this order,

12   including any negotiations regarding security

13   that Lionel might have to post to Sanda Kan to

14   cover any such costs that might arise with the

15   moving of the tooling.

16              Debtors believe that this relief is

17   in the best interest of their estate, first of

18   all, because this revised order is definitely

19   more favorable than the original request

20   requested.  It will preserve our relationship

21   with absolute critical inventory that provides

22   80 percent of our inventory.  It will enable us

23   to obtain two-and-a-half million dollars of

24   unsecured post-petition trade credit as soon as

25   two-and-a-half million dollars of critical

11

LIONEL, LLC

1

2   vendor payments are paid in full which credit

3   will continue for as long as these Chapter 11

4   cases as ling as there is no material adverse

5   change in our business.

6          Furthermore, Sanda Kan is also

7   waiving approximately $95,000 of its remaining

8   prepetition claim which is a portion of its

9   claim for prepetition interest on the

10  prepetition claim.

11         I think that pretty accurately

12  summarizes it.  I would also like to say in

13  addition to the order being signed by Sanda

14  Kan, the Creditors Committee and the debtors,

15  it has been reviewed by both counsel to both of

16  our post-petition lenders and they have

17  consented to the relief as well.

18         THE COURT:  Does anyone want to be

19  heard?

20         MR. RAICHT:  Yes, your Honor.  On

21  behalf of the Creditors Committee, I would just

22  -- Bob Raicht, Halperin Battaglia Raicht,

23  counsel for the Creditors Committee.

24         As noted, we did have some concerns

25  at the outset regarding the motion.  Basically,

12

LIONEL, LLC

1

2  the Committee was concerned that there was

3  significant consideration going out the door

4  and we weren't sure that the estates were

5  getting sufficient benefit for that.

6           Those payments -- we are also faced

7  with the idea the payments were being made to

8  an entity that is located in the Peoples

9  Republic of China and beyond the jurisdiction

10  of this court.

11           I will say that when we expressed

12  these concerns to both the debtors and Sanda

13  Kan, they were very cooperative to try to allay

14  and address our concerns.

15           I can report we asked and received

16  on a voluntary basis significant discovery

17  regarding underpinnings for proposed payments,

18  some scenarios as to what the financial impact

19  would have been upon the debtor were Sanda Kan

20  taking certain actions that they thought were

21  possible, as well as other information we

22  requested.  So we are very happy with the

23  amount of cooperation we received.

24           Thereafter for about a period of

25  three months the Creditors Committee engaged in

LIONEL, LLC

1

2    direct negotiations with Sanda Kan regarding

3    the terms of an order we would find

4    acceptable.  I will also report the Committee

5    was involved in every aspect of the

6    negotiations on almost a daily basis.  I won't

7    go over the accommodations that Miss Walsh

8    described.

9            Yes, it is a reduction in the amount

10    from the 5.7 to 2.5.  The other considerations

11    are the liens, the ability to remove the

12    tooling and inventory, the ability to not be

13    required to maintain any particular levels of

14    production are important in this case.

15            We don't know what the end game is

16    and I think it is important to have that kind

17    of flexibility built in this kind of projects.

18            There was a statement that the

19    jurisdiction was agreed to by Sanda Kan with

20    protection of the motion.  I think it is a

21    broader consent to jurisdiction.  I don't know

22    whether Sanda Kan filed a proof of claim or not

23    but whatever the jurisdiction that's conferred

24    by filing of the proof of claim is what I

25    understand they agreed in terms of the order.

LIONEL, LLC

1

2        Again, I would say this order does

3  reflect unanimous consent of the Creditors

4  Committee.  This has been a good thing for the

5  estate.

6        I think, in any event, I can't say

7  what has happened before the case or what will

8  happen afterwards, but I think this was one

9  where everybody worked together to try to

10  preserve the business and benefit of the

11  estate, so we support the motion.

12        THE COURT:  Does anybody else want

13  to be heard?

14        MS. KEYNES:  Jocelyn Keynes from

15  Stevens and Lee representing Mike's Train

16  House, one of the debtor's main competitors and

17  largest general unsecured creditor.

18        We just wanted to make a brief

19  statement.  We also support the settlement and

20  we believe that the Creditors Committee and its

21  professionals did an excellent job.

22        MR. ABRAMOWITZ:  Steven Abramowitz,

23  Vinson and Elkins on behalf of Sanda Kan.  I

24  would like to reiterate on behalf of what

25  everyone stated on the record we did, indeed,

15

```
 1                      LIONEL, LLC
 2   file a proof of claim which is, of course,
 3   modified by the relief granted in this order
 4   and we did, indeed, confer that in the
 5   jurisdiction that would come with the filing of
 6   the proof of claim.
 7              MR. CHAISANGUANTHUM:  Mike
 8   Chaisanguanthum, Weil Gotshal on behalf of the
 9   United Partners.  We would just like to echo
10   Miss Walsh's comments and add that we also
11   support the motion.
12              THE COURT:  I'll approve the
13   programming and entertain the order.
14              MR. WALSH:  May I approach with the
15   Dykeman and this order.
16              THE COURT:  I have approved each of
17   the orders.
18              MR. HARRIS:  Your Honor, the third
19   matter we have on this morning is the first
20   interim application for allowance of
21   compensation and reimbursement of the expenses
22   for O'Melveny and Myers, LLP as counsel to the
23   debtors in this case.
24              Your Honor, we filed our first
25   interim fee application covering the time
```

16

```
 1                    LIONEL, LLC
 2   period from the filing date, which was November
 3   15, 2004 through March 31, 2005, for a
 4   four-and-a-half month period seeking payments
 5   of fees in the aggregate amount of $1,597,133
 6   and 76 cents and expenses reimbursement of
 7   expenses in the aggregate amount of $80,303 and
 8   six cents.
 9             Your Honor, in accordance with this
10   Court's prior order authorizing payment of
11   monthly compensation, O'Melveny and Myers has
12   been paid in the aggregate approximately 1.4
13   million, which has been allocated 100 percent
14   to expenses in the first instance and then
15   representing what is approximately 80 percent
16   of the fees incurred to date continuing the 20
17   percent holdback provided by that order, which
18   we confirm was continuing.
19             We're not asking for a catchup at
20   this point in time, which is one of the issues
21   raised in the U.S. Trustee's amended objection.
22             There were no objections submitted
23   or responses submitted to any of our monthly
24   statements, which were distributed and served
25   in accordance with the Court's order, and other
```

17

1                        LIONEL, LLC

2  than the amended objection of the U.S.

3  Trustee's office, no objections were filed to

4  the first interim application.

5            The U.S. Trustee's office, your

6  Honor, did file an amended objection raising

7  what were essentially four issues.

8            First, your Honor, was the question

9  of whether O'Melveny was seeking to be paid the

10  20 percent holdback at this point in time and I

11  already confirmed and again will confirm we are

12  not seeking to do that at this point in time.

13            The U.S. Trustee raised certain

14  issues with respect to fees which they thought

15  were more timekeeper were more clerical in

16  nature in the amount of approximately, let's

17  see, $ 5,582, which we have agreed to write-off

18  and deduct from the residual holdback amount.

19            The U.S. Trustee's office also noted

20  with respect to nonworking travel of one of our

21  attorneys, we had inadvertently billed that

22  time at 100 percent rather than 50 percent and

23  representing another $4,987 and 50 cents, which

24  we have also agreed obviously to take off, your

25  Honor.

18

LIONEL, LLC

1

2       And then the last objection of the

3 U.S. Trustee, which I think was more the nature

4 of a shout across by bow then it was a

5 substantive objection had to do with the

6 lumping of time entries of some of the

7 professionals at O'Melveny and Myers who are

8 not as familiar with the rules of the court

9 with respect to the level of detail required

10 for their time entries and the U.S. Trustee has

11 agreed not to pursue that in connection with

12 this particular application but deemed me

13 forewarned with respect to any future

14 application we may file and we have sent around

15 appropriate notice to all the attorneys

16 internally to make sure they are much more

17 attentive to their timekeeping going forward,

18 so certainly that issue will not raise its head

19 again in this case.

20       With those changes, your Honor, we

21 would ask that the Court approve our first

22 interim application.

23       We can submit an order later today

24 with the necessary changes setting forth the

25 actual residual holdback amounts based upon the

19

LIONEL, LLC

1
2      agreement with reached with U.S. trustee.

3              I would be happy to answer any
4      questions your Honor may have.

5              THE COURT:  Does anybody want to be
6      heard?  The request for compensation as
7      modified by this record is granted.  Submit the
8      order.

9              MR. HARRIS:  Thank you, very much,
10     your Honor.  Your Honor, at this time, I would
11     like to take care of one quick housekeeping
12     matter relative to the preliminary injunction
13     hearing and I think we would ask the court to
14     give us basically 10 minutes so we can set up
15     the exhibit easels and things like that and get
16     ready to get started.

17             The housekeeping matter, your Honor,
18     I would like to move the admission pro hoc vice
19     of two of my colleagues who are residents in
20     O'Melveny and Myers California's offices.
21     David Enzminger and Ryan Yagura.

22             Mr. Enzminger is admitted to
23     practice in the Northern, Southern, Eastern and
24     Central Districts of California as well as the
25     district of Arizona.

20

```
 1              LIONEL, LLC

 2         Mr. Yagura is admitted to practice

 3    in the Northern, Southern and Central Districts

 4    of California as well as the Federal Circuit.

 5    They are both in good standing in connection

 6    with each of these admissions and we would

 7    request the Court authorize their admission pro

 8    hoc vice for purposes of the proceeding today.

 9         We will pay the fee associated with

10    each of those to the appropriate authorities.

11         THE COURT:  Will that be an expense

12    that will show up on your fee applications?

13         MR. HARRIS:  I think the $50 will be

14    gratis to O'Melveny and Myers, your Honor.

15         THE COURT:  Your application is

16    granted.

17         MR. HARRIS:  Thank you, your Honor.

18    If your Honor will give us 10 minutes so we can

19    set and up round up all the players.

20         (A break from the record was taken

21    at this time.)

22         MR. HARRIS:  Your Honor, thank you

23    so much for your patience and indulgence while

24    the parties have been conferring.

25         I believe that we have reached an
```

21

1                    LIONEL, LLC

2  agreement with K-Line that will resolve the

3  matters extant in the adversary proceeding or

4  was the subject of this morning's preliminary

5  injunction hearing.  Your Honor, I would

6  respectfully turn the podium over to my

7  colleague, Dale Cendali to present the terms of

8  that agreement and at the conclusion of which

9  we are going to ask obviously K-Line's counsel

10 to confirm their agreement with those terms and

11 we would probably ask that you so order the

12 record so that what we agreed to here today

13 will, in effect, be binding on all parties.

14          We will formally document it

15 afterwards but we want to have the record with

16 that as well so with that let me turn the

17 podium over to Miss Cendali.

18          MS. CENDALI:  Thank you, your

19 Honor.  I second my partner's appreciation to

20 this court for giving the parties a chance to

21 talk.

22          The parties have entered into an

23 agreement to settle this case.  The provisions

24 of which are as follows:  The defendants will

25 agree to the entry of a permanent injunction on

22

```
 1                    LIONEL, LLC
 2    consent which will enjoin them from making or
 3    selling any products containing Lionel
 4    technology at issue in this case, specifically
 5    the case sounds MDK 089 product, the MDK 0956
 6    transformer product and the MDK 090 cruise
 7    control product.  That the injunction though
 8    will not go into effect until January 31st of
 9    2006.
10              This does not affect any previously
11    existing licensing agreements that may exist
12    between the parties.
13              In the consent judgment, as I state
14    today, it will also detail the acknowledgement
15    of the parties that Mr. Pierson was
16    inappropriately hired by K-Line; that Lionel
17    technology was used without Lionel's
18    permission; that Lionel technology was, in
19    fact, used in K-Line's products and that the
20    technology is owned by Lionel and that K-Line
21    has no right, title and interest in that
22    technology other than pursuant to their right
23    to continue sales through January 31st of 2006
24    as provided in the settlement.
25              In addition, K-Line will execute
```

23

1                    LIONEL, LLC

2    appropriate documentation to confirm and to

3    clarify that this technology is Lionel and will

4    execute in particular assignment agreements to

5    make sure that any right, title and interest

6    they might have previously claimed are now the

7    property of Lionel.

8              In terms of financial terms, K-Line

9    will pay Lionel a 5 percent royalty on all

10   sales of products containing Lionel's

11   technology in these products for the year 2005

12   through January 31, 2006.

13             Such obligation will be audited.

14   K-Line will provide weekly financial statements

15   issued no later than the Wednesday of each week

16   with respect to sales completed by Friday of

17   the previous week.

18             With respect to royalties due from

19   sales from January 31, 2005 through today,

20   K-line will provide within one week a financial

21   statement indicating what royalties are due and

22   owing, and they will pay by November 1 what

23   they currently estimate that to be,

24   approximately $50,000 and they will pay the

25   first half of that sum on November 1st or by

24

                    LIONEL, LLC

1

2    November 1st, excuse me.

3              The royalties begin as of January 1,

4    2005, not January 31, 2005.  So the license

5    period in effect is January 1, 2005 through

6    January 31, 2006, so it is a 13 month period,

7    which happens to coincide with the end of

8    K-Line's fiscal year for this coming year.

9    They will pay the second half of the amount due

10   pursuant to the royalty on for past due

11   royalties, in other words, for royalties up

12   through today by January 31, 2006.

13             In addition, K-Line will execute and

14   deliver to Lionel a promissory note to

15   reimburse Lionel's for its attorney fees,

16   out-of-pocket costs and expenses incurred in

17   connection with the investigation and

18   prosecution of this adversary proceeding to the

19   sum of what those actual fees and costs

20   actually are, but up to $700,000.

21             Lionel will provide reasonable

22   documentation of such fees, costs and expenses

23   to K-Line subject to redaction to preserve any

24   applicable privilege where it might be

25   necessary.  The promissory note will be payable

25

1                        LIONEL, LLC

2    as follows:  $25,000 no later than September 15

3    and the remainder in equal monthly installments

4    over a seven year period with for each year an

5    equal amount paid.

6              The promissory note will be

7    personally guaranteed by each of defendant's

8    Bob Grubba and Maury Klein.  Mr. Klein's

9    guarantee will be secured by a pledge of his

10   equity interest in K-Line, subordinate only to

11   the existing pledge of such interest to is an

12   today can.

13             In addition, Mr. Grubba's pledge

14   will be secured to the extent permitted by

15   applicable law of his interest to whatever

16   extent that is, in the company's Broadway

17   Trains Ltd.

18             The failure to timely make any

19   payment obligation under this agreement will

20   constitute a material default under this

21   agreement that if not cured within five

22   business days after notice is given of the

23   breach shall result in an immediate

24   acceleration of all amounts due and payable and

25   a termination of any continuing right to sell

26

1              LIONEL, LLC

2  products containing Lionel technology during

3  the term of the sell-off period.

4              In addition, MDK, K-Line, gives

5  Lionel a worldwide fully paid up royalty free

6  license to make, use, import, sell or offer for

7  sale under all patents and patent applications

8  relating to model train command and control,

9  including all continuations, continuations in

10 part, divisionals, et cetera, whether or not

11 filed as of the date of this agreement.

12              K-Line represents and warrants that

13 technology with regard to such patent

14 applications and prospective patent

15 applications were not derived from the

16 technology at issue in this case that had come

17 from Lionel.

18              In addition, Lionel licenses to

19 K-Line to the extent that Lionel makes any

20 similar improvement, continuation or other

21 patents building on whatever patents K-Line has

22 licensed to them that K-Line would be licensed

23 to that technology on a fully paid up royalty

24 free basis as well.

25              There will be a release, a mutual

27

1                    LIONEL, LLC

2    release of all parties in this action with

3    respect to all matters set forth in the

4    complaint.

5            In addition, Lionel represents and

6    warrants that it has not to date contacted any

7    law enforcement authority with regard to the

8    activities alleged in the complaint.

9            In addition, the parties have agreed

10   to the extent that future disputes may arise

11   between the parties with respect to

12   misappropriation, technology and similar

13   issues, they will attempt to speak to one

14   another on an informal basis and mediate

15   informally the issues amongst themselves prior

16   to bringing any lawsuit.  I believe that that

17   reflects the agreement between the parties.

18            MS. BUTERA:  I believe that's true.

19            MS. CENDALI:  You Honor, we

20   respectfully request that the Court so order

21   the settlement agreement in the outlines that I

22   have provided.  It will be subject, outline

23   proposed and it remains in force and effect

24   until such time as the parties are able to

25   execute a fully detailed document that sets

28

1                    LIONEL, LLC

2    forth all the Is and Ts of the agreement.

3                    THE COURT:  Does anyone want to be

4    heard?  Before I hear from anybody, since these

5    are the terms that have been expressed by

6    counsel, there are a number of defendants that

7    are implicated in this consent judgment.

8                    Mr. Klein, are you present?

9                    MR. KLEIN:  Yes, I am.

10                   THE COURT:  Will you approach.

11   Mr. Grubba, will you approach.  You heard the

12   terms of the settlement on behalf of both all

13   the parties.

14                   MR. KLEIN:  Yes, we did.

15                   MR. GRUBBA:  Yes.

16                   THE COURT:  Do you agree with these

17   terms?

18                   MR. KLEIN:  Yes.

19                   THE COURT:  Do you understand this

20   is a judgment.  You are going to be bound by

21   this judgment?

22                   MR. KLEIN:  Yes.

23                   MR. GRUBBA:  Understood.

24                   THE COURT:  And you agree to

25   implement the terms that have just been set

29

1                         LIONEL, LLC

2     forth on the record?

3                    MR. KLEIN:  Yes, we do.

4                    MR. GRUBBA:  Yes.

5                    THE COURT:  This record is so

6     ordered.

7                    MS. CENDALI:  Thank you, your

8     Honor.

9                    MR. HARRIS:  Your Honor, I don't

10    know if you want to hear from any of the

11    parties.  I think Mr. Halperin had wanted to

12    say something relative to the settlement and,

13    other than that, we have no further business

14    before the court today.

15                   MR. HALPERIN:  It is after 12 so I

16    guess good afternoon, your Honor.  On behalf of

17    the Committee we appreciate your Honor's

18    indulgence as well.

19                   I am caught a little bit by

20    surprised because my understanding was the

21    collateralization to be offered by Mr. Grubba

22    was his stock interest in Broadway Ltd. and

23    precision scale models.  I'm now told it is

24    not.  I will discuss that further with debtors

25    counsel.

```
 1                    LIONEL, LLC

 2          Suffice to say the collateralization

 3   is a material component for the Creditors

 4   Committee to sign off on this deal as we

 5   believe it will help ensure the payments that

 6   are supposed to be made, ultimately are made

 7   and we would also want some assurance to the

 8   extent it is ultimately determined that one of

 9   these two entities will be offered as

10   collateral.  A, they are offered as

11   collateral.

12          It was some statement to be

13   permitted by law.  We understand that is going

14   to be worked out and it is a material statement

15   to the Committee and B there will be no

16   shifting of assets to that entity to make it

17   one more attractive to the other to the extent

18   we only get one to the other.

19          THE COURT:  I understand what you're

20   telling me.  You're saying that this settlement

21   as presently couched is not in the best

22   interest?

23          MR. HALPERIN:  You Honor, all I'm

24   saying I think the debtors has done a yeoman

25   job in bringing it fourth and getting a good
```

31

LIONEL, LLC

1

2  settlement.

3          My understanding out it the hallway

4  Mr. Grubba was to offer two components as

5  collateral as his under obligation under the

6  settlement.  It was Broadway Ltd. and precision

7  scale model.  It was said on the record it was

8  only Broadway Ltd.

9          That came as a bit of a surprise to

10  me but I want to discuss it with counsel.

11          THE COURT:  I think you're entitled

12  to clarification.

13          MS. CENDALI:  They were only willing

14  to provide the collateral, to pledge with

15  regard to Broadway Ltd. and in keeping with

16  what we believe to be the best interest of the

17  estate, counsel to the debtor determined that

18  in our view that was sufficient.

19          Counsel to the creditors Committee,

20  however, given the exigencies, was not apprised

21  of that, the way that issue came out and,

22  therefore, they are raising it now.

23          MR. HALPERIN:  Your Honor, I'm not

24  prepared to second guess the debtor at this

25  point as they have been integrally involved in

32

1                        LIONEL, LLC

2    this process and I think all and all this is a

3    good settlement for the debtor both in terms of

4    ensuring the infringing activities stopped, the

5    use of Lionel's technology stops and that there

6    is isn't remuneration to the estate.

7              Having said that, there are serious

8    wrongs that went on and I'm a little surprised

9    that someone is unwilling to offer collateral

10   as long as his obligations are met.  It is not

11   an issue but if it is not that's when the

12   estate would need protection.

13             THE COURT:  I share concerns as to

14   whether or not all of the terms here are in the

15   best of interest of the estate for purposes of

16   the 1990 settlement.

17             If there was an understanding with

18   the Creditors Committee by participation and

19   negotiations that certain collateral was either

20   to be utilized in connection with the

21   settlement or at least that the prospect of

22   shifting collateral so that whatever is

23   comprehended to be collateralized today is not

24   actually the result of any form of agreement, I

25   think that this should be buttoned down at this

33

```
1                    LIONEL, LLC
2    point.  I will give you a five minute recess.
3                    MR. HALPERIN:  Thank you, your
4    Honor.
5                    MS. CENDALI:  Thank you, your
6    Honor.
7                    THE COURT:  I do wish to comment
8    about the Court's concern with respect to the
9    section of appropriately collateralizing in the
10   agreement here that essentially the conduct
11   that has led to this request for injunctive
12   procedure is an element of background and
13   history which legitimately causes the Creditors
14   Committee's concern and would cause the Court
15   concern in the context of enforceability but
16   settlement generally understand is being
17   brought before the court for approval.  And I
18   would want to see that buttoned down because
19   I'm going to have to make a finding that this
20   is in the best interest of the estate.
21                    MR. HALPERIN:  Thank you, your
22   Honor.
23                    (A break from the record was taken.)
24                    MR. HALPERIN:  Thank you for the
25   brief recess, your Honor.  The parties have had
```

34

LIONEL, LLC

1

2    some further discussion and I believe I state

3    this accurately in that Lionel states the

4    obligations of Mr. Grubba and the others, the

5    joint several obligation will also be

6    collateralized by Mr. Grubba's interests in

7    Broadway Ltd. and precision scale model to the

8    extent legally possible.

9            They are going to be confirming that

10   there are no impediments to granting collateral

11   interests in those equity interests,

12   shareholders agreements and the like.  They

13   will confirm that for us relatively quickly.

14           If there are interests, if there are

15   impediments, we will sit down and have

16   discussion about appropriate substitute

17   collateral and demonstrate impediments and have

18   subsequent discussion about equity interests

19   that they have agreed to pledge his and his

20   family, I believe he said possibly his wife's

21   interest in both Broadway Ltd. and Precision

22   Craft, Inc. and with that modification, the

23   committee is fine with the settlement as

24   presented to the court.

25           THE COURT:  Mr. Grubba and and

35

1                    LIONEL, LLC
2    Mr. Klein, is that your understanding that's
3    just been described on the record?
4              MR. GRUBBA:  Yes.
5              MR. KLEIN:  Yes.
6              THE COURT:  He can't hear a head
7    shake.
8              MR. GRUBBA:  Yes.
9              MR. KLEIN:  Yes.
10             MR. ABRAMOWITZ:  Your Honor, as an
11   abundance of caution, I'm counsel to Sanda
12   Kan.  Of course I just want to make it clear
13   I'm counsel to Sanda Kan only in the capacity
14   of a creditor of Lionel.
15             I learned again Sanda Kan has
16   relationships with some of the defendants here
17   and I don't want my presence here to imply any
18   assumptions made about that or res judicata
19   effect or anything.  I will obviously advise my
20   client about this.
21             THE COURT:  Anyone else want to be
22   heard?  Again, I repeat, this record is so
23   ordered.  The basic terms and conditions are to
24   be considered enforceable, is that your
25   understanding, counsel?

36

1                     LIONEL, LLC

2              MS. CENDALI:  Yes, your Honor.

3              MS. BUTERA:  Yes, your Honor.

4              THE COURT:  Mr. Klein and

5    Mr. Grubba.

6              MR. KLEIN:  Yes.

7              MR. GRUBBA:  Yes.

8              THE COURT:  That is from this moment

9    on the injunctive features are etched in the

10   record and they are now binding.

11             MS. CENDALI:  Thank you, your

12   Honor.

13             THE COURT:  Thank you all.

14

15

16

17

18

19

20

21

22

23

24

25

37

1                     LIONEL, LLC

2                 C E R T I F I C A T E

3

4          I, MICHAEL WILLIAMS, a Certified

5    Shorthand Reporter and Notary Public of the

6    State of New York do hereby certify that the

7    foregoing is a true and accurate transcript of

8    the within proceedings, to the best of my

9    ability.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    _____

      **MICHAEL WILLIAMS, CSR**

25    **License No. XIO1991**

1

**A**

ABBEY 2:8
ability 13:11,12 37:9
able 27:24
Abramowitz 14:22
   14:22 35:10
absolute 10:21
abundance 35:11
acceleration 25:24
acceptable 13:4
accommodations
   13:7
accurate 37:7
accurately 11:11
   34:3
acknowledge 9:9
acknowledgement
   22:14
action 27:2
actions 12:20
activities 27:8 32:4
actual 18:25 24:19
Adam 2:6 4:3
add 15:10
addition 9:2 11:13
   22:25 24:13 25:13
   26:4,18 27:5,9
address 12:14
adjourned 4:11 7:23
adjourning 4:22
admission 19:18
   20:7
admissions 20:6
admitted 19:22 20:2
advance 7:6,8
adversary 21:3
   24:18
adverse 11:4
advise 35:19
advocate 5:7
affect 22:10
affiliates 4:5
afternoon 29:16
aggregate 16:5,7,12
agree 21:25 28:16

28:24
agreed 5:15 8:4
   13:19,25 17:17,24
   18:11 21:12 27:9
   34:19
agreement 19:2 21:2
   21:8,10,23 25:19
   25:21 26:11 27:17
   27:21 28:2 32:24
   33:10
agreements 22:11
   23:4 34:12
agrees 10:2,5,9
al 1:7
ALAN 3:11
Alicia 6:13
allay 12:13
alleged 27:8
allocated 16:13
allow 7:24
allowance 15:20
amended 16:21 17:2
   17:6
amount 7:9 12:23
   13:9 16:5,7 17:16
   17:18 24:9 25:5
amounts 18:25
   25:24
Angeles 2:11
answer 19:3
anybody 14:12 19:5
   28:4
appliacation 1:14
applicable 24:24
   25:15
application 4:10
   5:22 6:9,12 15:20
   15:25 17:4 18:12
   18:14,22 20:15
applications 1:13
   4:24 20:12 26:7,14
   26:15
appreciate 29:17
appreciation 21:19
apprised 31:20

approach 15:14
   28:10,11
appropriate 18:15
   20:10 23:2 34:16
appropriately 33:9
approval 5:25 33:17
approve 6:20 15:12
   18:21
approved 15:16
approximately 11:7
   16:12,15 17:16
   23:24
April 6:20
Arizona 19:25
asked 12:15
asking 16:19
aspect 13:5
asserting 9:22
assets 30:16
assignment 23:4
associated 20:9
assumptions 35:18
assurance 30:7
attempt 27:13
attentive 18:17
attorney 24:15
attorneys 2:4,10,15
   2:21 3:4,8 17:21
   18:15
attractive 30:17
audited 23:13
August 1:10
authorities 20:10
authority 27:7
authorize 20:7
authorizing 16:10
Avenue 2:22 3:4,8
avoid 9:22

**B**

B 1:17 3:6 30:15
back 8:6
background 33:12
Bankruptcy 1:2,18
based 7:2 18:25

basic 35:23
basically 11:25
   19:14
basis 12:16 13:6
   26:24 27:14
Battaglia 3:7 11:22
behalf 4:4 11:21
   14:23,24 15:8
   28:12 29:16
believe 4:11 10:16
   14:20 20:25 27:16
   27:18 30:5 31:16
   34:2,20
beneficial 9:4
benefit 12:5 14:10
best 10:17 30:21
   31:16 32:15 33:20
   37:8
beyond 12:9
billed 17:21
binding 21:13 36:10
bit 29:19 31:9
Bob 11:22 25:8
bound 28:20
bow 18:4
Bowling 1:11
breach 25:23
break 20:20 33:23
brief 14:18 33:25
bringing 27:16
   30:25
broader 13:21
Broadway 25:16
   29:22 31:6,8,15
   34:7,21
brought 33:17
building 26:21
built 13:17
BURTON 1:17
business 11:5 14:10
   25:22 29:13
BUTERA 2:19
   27:18 36:3
buttoned 32:25
   33:18

**C**

C 2:2,6 3:2 4:2 37:2 37:2
calendar 4:8
California 2:11 19:24 20:4
California's 19:20
called 4:19
capacity 35:13
care 19:11
case 1:6 6:6 13:14 14:7 15:23 18:19 21:23 22:4,5 26:16
cases 11:4
cash 7:6,7 8:24
catchup 16:19
caught 29:19
cause 1:15 33:14
causes 33:13
caution 35:11
cc 1:15
CELESTE 2:19
Cendali 2:7 21:7,17 21:18 27:19 29:7 31:13 33:5 36:2,11
Central 19:24 20:3
cents 16:6,8 17:23
certain 5:25 6:21 9:4 12:20 17:13 32:19
certainly 18:18
Certified 37:4
certify 37:6
cetera 26:10
Chadbourne 4:10 5:13
Chaisanguanthum 3:6 15:7,8
chambers 5:5,16
chance 21:20
change 11:5
changes 18:20,24
changing 7:7
Chapter 11:3
China 9:21 12:9
Circuit 20:4

claim 7:3 8:13 11:8 11:9,10 13:22,24 15:2,6
claimed 23:6
clarification 31:12
clarify 23:3
clear 35:12
clerical 17:15
client 35:20
coincide 24:7
collateral 30:10,11 31:5,14 32:9,19,22 34:10,17
collateralization 29:21 30:2
collateralized 32:23 34:6
collateralizing 33:9
colleague 21:7
colleagues 19:19
come 6:15 15:5 26:16
comes 4:24
coming 24:8
command 26:8
comment 33:7
comments 15:10
commit 7:12
committee 3:8 7:20 7:25 9:2 11:14,21 11:23 12:2,25 13:4 14:4,20 29:17 30:4 30:15 31:19 32:18 34:23
Committee's 33:14
company 9:5
company's 25:16
compensation 15:21 16:11 19:6
competitors 14:16
complaint 27:4,8
completed 23:16
component 30:3
components 31:4
comprehended

32:23
concern 33:8,14,15
concerned 5:17 12:2
concerns 11:24 12:12,14 32:13
conclusion 21:8
conditions 35:23
conduct 33:10
confer 15:4
conferred 13:23
conferring 20:24
confirm 9:9 16:18 17:11 21:10 23:2 34:13
confirmed 17:11
confirming 34:9
connection 18:11 20:5 24:17 32:20
consent 5:2 6:16 13:21 14:3 22:2,13 28:7
consented 9:15 11:17
consideration 12:3
considerations 13:10
considered 35:24
considering 7:7
constitute 25:20
contacted 27:6
containing 22:3 23:10 26:2
context 33:15
continuation 26:20
continuations 26:9,9
continue 11:3 22:23
continuing 16:16,18 25:25
control 9:11 22:7 26:8
Cont'd 3:2
cooperation 12:23
cooperative 12:13
costs 10:5,14 24:16 24:19,22

couched 30:21
counsel 11:15,23 15:22 21:9 28:6 29:25 31:10,17,19 35:11,13,25
course 15:2 35:12
court 1:2 4:17,22 5:7 6:5,18 8:10 10:10 11:18 12:10 14:12 15:12,16 18:8,21 19:5,13 20:7,11,15 21:20 27:20 28:3,10,16 28:19,24 29:5,14 30:19 31:11 32:13 33:7,14,17 34:24 34:25 35:6,21 36:4 36:8,13
Court's 16:10,25 33:8
cover 10:14
covering 15:25
Craft 34:22
credit 8:15,22 9:7 10:24 11:2
creditor 14:17 35:14
creditors 3:8 7:20 7:25 9:2,20 11:14 11:21,23 12:25 14:3,20 30:3 31:19 32:18 33:13
critical 6:2,21 10:21 10:25
cruise 22:6
CSR 37:24
cured 25:21
current 10:3
currently 7:14 9:12 23:23
Custom 1:11

**D**

D 3:10,11 4:2
daily 13:6
Dale 2:7 21:7

date 4:12 16:2,16
  26:11 27:6
David 2:12 19:21
days 25:22
deal 9:20 30:4
deals 4:18
debtor 1:8 10:2
  12:19 31:17,24
  32:3
debtors 4:5,5 9:9
  10:16 11:14 12:12
  15:23 29:24 30:24
debtor's 5:25 14:16
deduct 17:18
deemed 9:9,15 18:12
default 25:20
defendants 21:24
  28:6 35:16
defendant's 25:7
definitely 10:18
deliver 24:14
demonstrate 34:17
derived 26:15
described 13:8 35:3
detail 18:9 22:14
detailed 27:25
determined 30:8
  31:17
difference 8:16
differences 8:7
direct 13:2
disbanded 7:20
discovery 12:16
discuss 29:24 31:10
discussion 34:2,16
  34:18
disputes 27:10
distributed 16:24
district 1:3 19:25
Districts 19:24 20:3
divisionals 26:10
document 21:14
  27:25
documentation 23:2
  24:22

doing 7:13,14
dollars 8:18,21 9:7
  10:23,25
door 12:3
due 23:18,21 24:9
  24:10 25:24
Dykema 5:24 6:8,11
Dykeman 15:15

─────── E ───────
E 1:17,17 2:2,2,18
  3:2,2 4:2,2 37:2,2
EAB 2:16
easels 19:15
Eastern 19:23
echo 15:9
effect 21:13 22:8
  24:5 27:23 35:19
either 5:12 32:19
Electric 1:14
element 33:12
Elkins 14:23
enable 10:22
enforceability 33:15
enforceable 35:24
enforcement 27:7
engaged 12:25
enjoin 22:2
ensure 30:5
ensuring 32:4
entered 21:22
entertain 6:18 15:13
entities 9:22 30:9
entitled 31:11
entity 9:20 12:8
  30:16
entries 18:6,10
entry 21:25
Enzminger 2:12
  19:21,22
equal 25:3,5
equity 25:10 34:11
  34:18
ESQ 2:6,7,8,12,13
  2:17,18,19,23 3:6

3:10,11
essentially 17:7
  33:10
estate 8:24 10:17
  14:5,11 31:17 32:6
  32:12,15 33:20
estates 12:4
estimate 23:23
et 1:7 26:10
etched 36:9
euphemistically
  4:19
event 14:6
everybody 14:9
excellent 14:21
exchange 8:13,20
excuse 24:2
execute 22:25 23:4
  24:13 27:25
exhibit 19:15
exigencies 31:20
exist 22:11
existing 22:11 25:11
expense 20:11
expenses 15:21 16:6
  16:7,14 24:16,22
expressed 12:11
  28:5
extant 21:3
extent 25:14,16
  26:19 27:10 30:8
  30:17 34:8

─────── F ───────
F 1:17 37:2
faced 12:6
facility 10:8
fact 22:19
factories 9:21
failure 25:18
faith 7:17 8:3
familiar 18:8
family 34:20
far 5:17
favorable 10:19

features 36:9
Federal 20:4
fee 1:13,14 4:24 6:12
  15:25 20:9,12
fees 4:10 16:5,16
  17:14 24:15,19,22
Fifth 3:4
file 15:2 17:6 18:14
filed 6:20 13:22
  15:24 17:3 26:11
filing 13:24 15:5
  16:2
financial 12:18 23:8
  23:14,20
find 13:3
finding 33:19
fine 34:23
first 5:22 6:11,11
  10:17 15:19,24
  16:14 17:4,8 18:21
  23:25
fiscal 24:8
five 25:21 33:2
flexibility 13:17
follows 21:24 25:2
force 27:23
foregoing 37:7
forewarned 18:13
form 8:5 32:24
formally 7:19 21:14
forth 18:24 27:3
  28:2 29:2
forward 18:17
four 8:19 17:7
fourth 30:25
four-and-a-half
  16:4
free 26:5,24
Friday 23:16
full 9:6 11:2
fully 26:5,23 27:25
further 9:25 29:13
  29:24 34:2
Furthermore 7:11
  9:14 11:6

future 9:17 18:13
  27:10

——————————
G
——————————
G 4:2
game 13:15
general 14:17
generally 33:16
getting 12:5 30:25
give 19:14 20:18
  33:2
given 25:22 31:20
gives 26:4
giving 21:20
go 13:7 22:8
going 5:11 12:3
  18:17 21:9 28:20
  30:13 33:19 34:9
good 6:10 7:17 8:3
  14:4 20:5 29:16
  30:25 32:3
goods 9:16
Gossett 5:24
Gotshal 3:3 15:8
granted 15:3 19:7
  20:16
granting 34:10
gratis 20:14
Green 1:11
Grubba 1:15 2:15
  25:8 28:11,15,23
  29:4,21 31:4 34:4
  34:25 35:4,8 36:5
  36:7
Grubba's 25:13
  34:6
guarantee 25:9
guaranteed 25:7
guess 29:16 31:24
Guggenheim 3:4

——————————
H
——————————
half 23:25 24:9
hallway 31:3
Halperin 3:7,11

11:22 29:11,15
  30:23 31:23 33:3
  33:21,24
happen 14:8
happened 14:7
happens 24:7
happy 12:22 19:3
Harris 2:6 4:3,3
  5:10 6:6 15:18
  19:9 20:13,17,22
  29:9
head 18:18 35:6
hear 28:4 29:10 35:6
heard 11:19 14:13
  19:6 28:4,11 35:22
hearing 5:20 7:23
  19:13 21:5
help 30:5
hired 22:16
history 33:13
hoc 19:18 20:8
hold 9:10,13
holdback 4:19 16:17
  17:10,18 18:25
HON 1:17
Honor 4:7,21 5:4,10
  6:4,11 8:6 11:20
  15:18,24 16:9 17:6
  17:8,25 18:20 19:4
  19:10,10,17 20:14
  20:17,18,22 21:5
  21:19 27:19 29:8,9
  29:16 30:23 31:23
  33:4,6,22,25 35:10
  36:2,3,12
Honor's 29:17
Hope 2:10
hoping 8:8
hot 4:23
House 1:11 2:21
  14:16
housekeeping 19:11
  19:17

——————————
I
——————————

idea 12:7
immediate 25:23
impact 12:18
impediments 34:10
  34:15,17
implement 28:25
implicated 28:7
imply 35:17
import 26:6
important 13:14,16
improvement 8:23
  26:20
inadvertently 17:21
inappropriately
  22:16
include 9:3
including 10:12 26:9
incurred 10:6 16:16
  24:16
indemnify 10:5
indicating 23:21
indulgence 20:23
  29:18
Industrial 1:13 6:22
informal 27:14
informally 27:15
information 12:21
informed 7:2,21
infringing 32:4
Initially 8:11
injunction 1:15 5:20
  19:12 21:5,25 22:7
injunctive 33:11
  36:9
installments 25:3
instance 9:6 16:14
integrally 31:25
interest 10:17 11:9
  22:21 23:5 25:10
  25:11,15 29:22
  30:22 31:16 32:15
  33:20 34:21
interests 34:6,11,11
  34:14,18
interim 5:22,24 6:12

15:20,25 17:4
  18:22
internally 18:16
inventory 6:23 7:15
  9:8,10,16 10:21,22
  13:12
investigation 24:17
involved 13:5 31:25
issue 4:15,20 18:18
  22:4 26:16 31:21
  32:11
issued 23:15
issues 4:17 5:2,14
  16:20 17:7,14
  27:13,15

——————————
J
——————————
January 22:8,23
  23:12,19 24:3,4,5
  24:6,12
job 14:21 30:25
Jocelyn 2:23 14:14
joint 34:5
Judge 1:18
judgment 22:13
  28:7,20,21
judicata 35:18
jurisdiction 10:10
  12:9 13:19,21,23
  15:5

——————————
K
——————————
K 2:13
Kan 1:13 6:2,8,21
  6:25 8:2,12,17 9:8
  9:13,18 10:2,4,5,9
  10:13 11:6,14
  12:13,19 13:2,19
  13:22 14:23 35:12
  35:13,15
Kan's 9:11,16,23
  10:7
keeping 31:15
Keynes 2:23 14:14
  14:14

kind 13:16,17
Klein 1:14 2:15 25:8
  28:8,9,14,18,22
  29:3 35:2,5,9 36:4
  36:6
Klein's 25:8
know 13:15,21
  29:10
K-Line 1:14 21:2
  22:16,20,25 23:8
  23:14,20 24:13,23
  25:10 26:4,12,19
  26:21,22
K-Linem 2:15
K-Line's 21:9 22:19
  24:8

L
largest 6:22 14:17
law 25:15 27:7 30:13
lawsuit 27:16
lawyers 4:23
learned 35:15
led 33:11
Lee 2:21 14:15
legally 34:8
legitimately 33:13
lenders 11:16
Leonard 4:14 5:3
  6:14
let's 17:16
level 7:12 10:3 18:9
levels 13:13
license 24:4 26:6
  37:25
licensed 26:22,22
licenses 26:18
licensing 22:11
lien 9:22
liens 13:11
LIFLAND 1:17
ling 11:4
Lionel 1:7 2:1,4,10
  3:1 4:1,4 5:1 6:1
  6:23 7:1,25 8:1,15

8:20 9:1 10:1,4,13
  11:1 12:1 13:1
  14:1 15:1 16:1
  17:1 18:1 19:1
  20:1 21:1 22:1,3
  22:16,18,20 23:1,3
  23:7,9 24:1,14,21
  25:1 26:1,2,5,17
  26:18,19 27:1,5
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1,3 35:1,14
  36:1 37:1
Lionel's 9:15,23
  22:17 23:10 24:15
  32:5
little 29:19 32:8
LLC 1:7 2:1 3:1 4:1
  4:4 5:1 6:1 7:1 8:1
  9:1 10:1 11:1 12:1
  13:1 14:1 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1 29:1 30:1
  31:1 32:1 33:1
  34:1 35:1 36:1
  37:1
LLP 1:14 2:3,9,14
  3:3,7 15:22
located 12:8
long 11:3 32:10
Los 2:11
lumping 18:6

M
M 2:7,19
Madison 2:22 3:8
main 14:16
maintain 6:25 7:4
  7:12 10:3 13:13
making 22:2
MANGES 3:3
manufactured 1:13

manufacturer 6:22
manufacturing 7:13
  7:15
March 16:3
material 11:4 25:20
  30:3,14
matter 1:5 5:18 6:11
  15:19 19:12,17
matters 4:7,9,16
  5:19 6:8 10:11
  21:3 27:3
Maury 1:14 25:8
MDK 1:14 2:15 22:5
  22:5,6 26:4
mediate 27:14
met 32:10
MICHAEL 2:17 3:6
  37:4,24
Mike 15:7
Mike's 2:21 14:15
million 8:12,13,14
  8:18,21,23,24 9:7
  10:23,25 16:13
mind 4:22
minute 33:2
minutes 19:14 20:18
misappropriation
  27:12
model 26:8 31:7
  34:7
models 29:23
modification 34:22
modified 15:3 19:7
moment 36:8
month 16:4 24:6
monthly 16:11,23
  25:3
months 7:24 12:25
morning 4:8,12 5:21
  6:10 15:19 21:4
motion 1:13 5:25
  6:20 7:18 8:8
  11:25 13:20 14:11
  15:11
move 10:6 19:18

moving 10:15
mutual 26:25
Myers 2:3,9 4:4 5:23
  15:22 16:11 18:7
  19:20 20:14

N
N 2:2 3:2 4:2
nature 17:16 18:3
necessary 18:24
  24:25
need 32:12
negotiated 7:16 9:3
negotiation 7:24
negotiations 8:4
  10:12 13:2,6 32:19
new 1:3,12,12 2:5,5
  2:16,22,22 3:5,5,9
  3:9 8:16 9:12 37:6
nonworking 17:20
Northern 19:23 20:3
Notary 37:5
note 24:14,25 25:6
noted 11:24 17:19
notice 18:15 25:22
November 16:2
  23:22,25 24:2
number 28:6

O
O 1:17 4:2
objection 6:12,15
  16:21 17:2,6 18:2
  18:5
objections 7:22
  16:22 17:3
obligation 10:3
  23:13 25:19 31:5
  34:5
obligations 32:10
  34:4
obtain 10:23
obviously 17:24
  21:9 35:19
offer 26:6 31:4 32:9

6

**offered** 29:21 30:9 30:10
**office** 4:16 5:16 17:3 17:5,19
**offices** 19:20
**okay** 5:6,9
**operating** 7:5
**order** 5:2,15 6:3,16 6:24 7:8 8:17 9:3 9:25 10:11,18 11:13 13:3,25 14:2 15:3,13,15 16:10 16:17,25 18:23 19:8 21:11 27:20
**ordered** 29:6 35:23
**orders** 7:9 15:17
**Orderto** 1:15
**original** 10:19
**originally** 4:9 8:7
**outline** 27:22
**outlines** 27:21
**outset** 11:25
**outside** 10:7
**out-of-pocket** 24:16
**owing** 23:22
**owned** 1:13 22:20
**O'Melveny** 2:3,9 4:3 5:23 15:22 16:11 17:9 18:7 19:20 20:14
**O'Melveny's** 6:9

**P**

**P** 2:2,2,12,17 3:2,2 4:2
**paid** 11:2 16:12 17:9 25:5 26:5,23
**Parke** 4:10
**part** 26:10
**participation** 32:18
**particular** 6:3 13:13 18:12 23:4
**parties** 8:4 20:24 21:13,20,22 22:12 22:15 27:2,9,11,17

27:24 28:13 29:11 33:25
**Partners** 3:4 15:9
**partner's** 21:19
**patent** 26:7,13,14
**patents** 26:7,21,21
**patience** 20:23
**pay** 7:6 20:9 23:9,22 23:24 24:9
**payable** 24:25 25:24
**payment** 6:2 7:4 8:18 9:6 16:10 25:19
**payments** 6:21 9:8 9:19 11:2 12:6,7 12:17 16:4 30:5
**Peoples** 12:8
**percent** 7:14 10:22 16:13,15,17 17:10 17:22,22 23:9
**period** 12:24 16:2,4 24:5,6 25:4 26:3
**permanent** 21:25
**permission** 22:18
**permitted** 25:14 30:13
**personally** 25:7
**PIA** 2:18
**pick** 10:6
**Pierson** 22:15
**placed** 7:10
**players** 20:19
**Plaza** 2:16
**Please** 8:10
**pledge** 25:9,11,13 31:14 34:19
**podium** 6:7 21:6,17
**point** 16:20 17:10,12 31:25 33:2
**portion** 11:8
**possession** 4:6 9:11 9:17,24
**possible** 12:21 34:8
**possibly** 34:20
**post** 7:8 10:13

**postpetition** 8:15
**post-petition** 8:21 10:24 11:16
**practice** 19:23 20:2
**precision** 29:23 31:6 34:7,21
**preliminary** 1:15 5:20 19:12 21:4
**prepared** 31:24
**prepetition** 7:3 8:13 11:8,9,10
**presence** 35:17
**present** 5:4 6:7 21:7 28:8
**presented** 34:24
**presently** 30:21
**preserve** 10:20 14:10 24:23
**pretty** 11:11
**previous** 23:17
**previously** 22:10 23:6
**primary** 8:16
**prior** 16:10 27:15
**privilege** 24:24
**pro** 19:18 20:7
**probably** 21:11
**procedure** 33:12
**proceeding** 20:8 21:3 24:18
**proceedings** 37:8
**process** 32:2
**product** 22:5,6,7
**production** 10:4 13:14
**products** 22:3,19 23:10,11 26:2
**professionals** 14:21 18:7
**programming** 15:13
**projects** 13:17
**promissory** 24:14,25 25:6
**proof** 13:22,24 15:2 15:6

**property** 9:23 23:7
**proposed** 8:8,11 9:12 12:17 27:23
**prosecution** 24:18
**prospect** 32:21
**prospective** 26:14
**protection** 13:20 32:12
**provide** 23:14,20 24:21 31:14
**provided** 16:17 22:24 27:22
**provides** 9:25 10:21
**provisions** 9:4 21:23
**Public** 37:5
**purchase** 1:13
**purporting** 5:12
**purposes** 20:8 32:15
**pursuant** 22:22 24:10
**pursue** 18:11
**put** 5:11
**putting** 5:8
**P.C** 2:21

**Q**

**question** 17:8
**questions** 19:4
**quick** 19:11
**quickly** 34:13

**R**

**R** 1:17,17 2:2 3:2 4:2 37:2
**RADLER** 2:14
**Raicht** 3:7,10 11:20 11:22,22
**raise** 18:18
**raised** 16:21 17:13
**raising** 17:6 31:22
**reached** 19:2 20:25
**ready** 19:16
**really** 4:23
**reasonable** 24:21
**receive** 8:17,20

received 12:15,23
recess 33:2,25
reconstituted 7:21
record 14:25 19:7
  20:20 21:12,15
  29:2,5 31:7 33:23
  35:3,22 36:10
redaction 24:23
reduction 13:9
reflect 14:3
reflects 27:17
regard 26:13 27:7
  31:15
regarding 10:12
  11:25 12:17 13:2
reimburse 24:15
reimbursement
  15:21 16:6
reiterate 14:24
relating 26:8
relationship 6:25
  10:20
relationships 35:16
relative 19:12 29:12
relatively 34:13
release 26:25 27:2
relief 6:24 7:18,22
  8:5 10:16 11:17
  15:3
remainder 25:3
remaining 5:14 11:7
remains 27:23
remember 6:19
removal 9:15
remove 13:11
remuneration 32:6
repeat 35:22
replies 4:18
report 12:15 13:4
Reporter 37:5
representing 14:15
  16:15 17:23
represents 26:12
  27:5
Republic 12:9

request 10:19 19:6
  20:7 27:20 33:11
requested 7:18,22
  10:20 12:22
require 7:8
required 9:19 13:13
  18:9
res 35:18
residents 19:19
residual 17:18 18:25
resolve 5:18 6:15
  21:2
respect 17:14,20
  18:9,13 23:16,18
  27:3,11 33:8
respectfully 21:6
  27:20
responses 16:23
result 4:13 7:16 8:3
  25:23 32:24
reviewed 11:15
revised 8:5 10:18
right 8:24 22:21,22
  23:5 25:25
RIVERSO 2:18
RIVKIN 2:14
Robert 1:15 3:10
round 20:19
royalties 23:18,21
  24:3,11,11
royalty 23:9 24:10
  26:5,23
rules 18:8
Ryan 2:13 19:21

_____
S
_____

s 2:2 3:2 4:2 21:4
sale 26:7
sales 22:23 23:10,16
  23:19
Sanda 1:13 6:2,8,21
  6:25 8:2,12,17 9:8
  9:11,13,16,17,23
  10:2,4,5,7,9,13
  11:6,13 12:12,19

13:2,19,22 14:23
  35:11,13,15
saving 8:24
saying 30:20,24
scale 29:23 31:7
  34:7
scenarios 12:18
scheduled 4:9
second 5:23,23
  21:19 24:9 31:24
section 33:9
secured 25:9,14
security 7:9 10:12
see 4:17 8:22 17:17
  33:18
seeking 5:3 16:4
  17:9,12
sell 25:25 26:6
selling 22:3
sell-off 26:3
send 5:5
sent 18:14
September 25:2
serious 32:7
served 16:24
set 19:14 20:19 27:3
  28:25
sets 27:25
setting 18:24
settle 21:23
settlement 14:19
  22:24 27:21 28:12
  29:12 30:20 31:2,6
  32:3,16,21 33:16
  34:23
seven 25:4
shake 35:7
share 32:13
shareholders 34:12
shifting 30:16 32:22
shipments 7:6
Shorthand 37:5
Shortly 7:19
shout 18:4
show 1:15 20:12

sign 30:4
signed 5:16 11:13
significant 12:3,16
similar 26:20 27:12
sit 34:15
six 16:8
size 7:2
soon 10:24
sought 6:24
sounds 22:5
South 2:10
Southern 1:3 19:23
  20:3
speak 5:4,12 27:13
specifically 22:4
spread 8:19
Square 2:4
standing 20:5
started 19:16
state 22:13 34:2 37:6
stated 14:25
statement 13:18
  14:19 23:21 30:12
  30:14
statements 16:24
  23:14
states 1:2,11 34:3
Steven 14:22
Stevens 2:21 14:15
stock 29:22
stopped 32:4
stops 32:5
Street 2:10
subject 21:4 24:23
  27:22
submit 6:17 8:9 10:9
  18:23 19:7
submitted 7:18
  16:22,23
submitting 5:15
subordinate 25:10
subsequent 34:18
substantial 7:9
substantive 18:5
substitute 34:16

Suffice 30:2
sufficient 12:5 31:18
sum 23:25 24:19
summarizes 11:12
support 14:11,19
  15:11
supposed 30:6
sure 7:11 12:4 18:16
  23:5
surprise 31:9
surprised 29:20
  32:8

_____

**T**

T 37:2,2
take 6:4,8 17:24
  19:11
taken 20:20 33:23
talk 21:21
technology 22:4,17
  22:18,20,22 23:3
  23:11 26:2,13,16
  26:23 27:12 32:5
telling 30:20
term 26:3
termination 25:25
terms 7:4 13:3,25
  21:7,10 23:8,8
  28:5,12,17,25 32:3
  32:14 35:23
thank 19:9 20:17,22
  21:18 29:7 33:3,5
  33:21,24 36:11,13
thing 14:4
things 19:15
think 4:13 5:3 6:13
  11:11 13:16,20
  14:6,8 18:3 19:13
  20:13 29:11 30:24
  31:11 32:2,25
third 5:24 15:18
thought 12:20 17:14
three 4:16 5:19 8:19
  12:25
time 9:17 15:25

16:20 17:10,12,22
  18:6,10 19:10
  20:21 27:24
timekeeper 17:15
timekeeping 18:17
timely 25:18
times 2:4 7:23
title 9:10,13 22:21
  23:5
today 6:16 8:9 18:23
  20:8 21:12 22:14
  23:19 24:12 25:12
  29:14 32:23
told 29:23
tooling 1:13 9:10,12
  10:7,15 13:12
trade 8:15,22 10:24
train 2:21 14:15
  26:8
Trains 1:14 25:17
transcript 37:7
transformer 22:6
travel 17:20
trot 4:23
true 27:18 37:7
trustee 6:13 17:13
  18:3,10 19:2
Trustee's 4:15,18
  5:16 16:21 17:3,5
  17:19
try 12:13 14:9
Ts 28:2
turn 6:7 21:6,16
two 4:8 19:19 30:9
  31:4
two-and-a-half 8:18
  8:20 9:7 10:23,25

_____

**U**

ultimately 30:6,8
unable 7:3
unanimous 14:3
underpinnings
  12:17
understand 13:25

28:19 30:13,19
  33:16
understanding 4:25
  29:20 31:3 32:17
  35:2,25
Understood 28:23
Uniondale 2:16
United 1:2,11 15:9
unsecured 8:14,21
  10:24 14:17
unwilling 32:9
use 26:6 32:5
usually 4:23
utilized 32:20
U.S 4:15,18 5:16
  6:13 16:21 17:2,5
  17:13,19 18:3,10
  19:2

_____

**V**

vacation 4:14 6:14
vast 8:22
vendor 11:2
vendors 6:2
VERSICHELLI
  2:17
vice 19:18 20:8
view 31:18
Vinson 14:23
voluntary 12:16

_____

**W**

waiving 11:7
Walsh 2:8 4:21,25
  6:7,10,19 8:11
  13:7 15:14
Walsh's 15:10
want 11:18 14:12
  19:5 21:15 28:3
  29:10 30:7 31:10
  33:18 35:12,17,21
wanted 14:18 29:11
warranted 9:18
warrants 26:12 27:6
way 31:21

Wednesday 23:15
week 4:14 6:14
  23:15,17,20
weekly 23:14
weeks 8:19
Weil 3:3 15:8
Weiser 1:14 4:11
  5:13
went 32:8
weren't 7:11 12:4
We're 16:19
wife's 34:20
WILLIAMS 37:4
  37:24
willing 31:13
wish 33:7
words 24:11
worked 14:9 30:14
worldwide 26:5
write-off 17:17
wrongs 32:8

_____

**X**

x 1:4,9
XIO1991 37:25

_____

**Y**

Yagura 2:13 19:21
  20:2
year 7:5 23:11 24:8
  24:8 25:4,4
yeoman 30:24
York 1:3,12,12 2:5,5
  2:16,22,22 3:5,5,9
  3:9 37:6

_____

**$**

$1,597,133 16:5
$2 8:23,23
$25,000 25:2
$4,987 17:23
$4.7 8:12
$5 8:14
$50 20:13
$50,000 23:24
$6.7 8:12

| | |
|---|---|
| $700,000 24:20 | 5 23:9 |
| $80,303 16:7 | 5,582 17:17 |
| $95,000 11:7 | 5.7 13:10 |
| | 50 17:22,23 |
| **0** | 555 3:8 |
| 04-17324 1:7 | |
| 089 22:5 | **7** |
| 090 22:6 | 7 2:4 |
| 0956 22:5 | 76 16:6 |
| | 767 3:4 |
| **1** | |
| 1 23:22 24:3,5 | **8** |
| 1st 23:25 24:2 | 80 7:14 10:22 16:15 |
| 1.4 16:12 | |
| 10 19:14 20:18 | **9** |
| 100 16:13 17:22 | 9 1:10 |
| 10004 1:12 | 90071 2:11 |
| 10022 2:22 3:9 | |
| 10036 2:5 | |
| 10153 3:5 | |
| 11 11:3 | |
| 11556 2:16 | |
| 12 29:15 | |
| 13 24:6 | |
| 15 16:3 25:2 | |
| 1990 32:16 | |
| | |
| **2** | |
| 2.5 13:10 | |
| 20 16:16 17:10 | |
| 2004 16:3 | |
| 2005 1:10 16:3 23:11 | |
|   23:19 24:4,4,5 | |
| 2006 22:9,23 23:12 | |
|   24:6,12 | |
| | |
| **3** | |
| 31 16:3 23:12,19 | |
|   24:4,6,12 | |
| 31st 22:8,23 | |
| | |
| **4** | |
| 400 2:10 | |
| 485 2:22 | |
| | |
| **5** | |

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# Minutes of Proceedings

Date: **August 9, 2005**

In re:

    **LIONEL L.L.C., et. Al,**

                   **Debtors,**

    **LIONEL L.L.C.,**

                   **Plaintiff,**

        v.

    **K-LINE ELECTRIC TRAINS, INC., MDK INC.,**
    **MAURY KLEIN, ROBERT GRUBBA**

                 **Defendants.**

Case No. 04-17324(BRL)

Adv. Pro. No. 05-2337

Present:  Hon.  **Burton R. Lifland**      **Mary Lopez**        **Michael Williams**
               **Bankruptcy Judge**     **Courtroom Deputy**     **Court Reporter**

**Trustee** _____
**Counsel** _____
**Debtor(s)** _____
**Counsel** _____
**1. Creditor** _____
**Counsel** _____
**2. Creditor** _____
**Counsel** _____
**3. Plaintiff/Applicant** _____
**Counsel** _____
**4. Defendant/Respondent** _____  **Counsel** _____

**Proceedings:**  ✖ Lionel's Motion by Order to Show Cause for Injunctive Relief
           ◻ Motion to Void Lien Held By
           ◻ Motion by
           ◻ Motion to Confirm/Modify Plan

**Orders:**     ◻ Relief sought in complaint/motion:
         ◻ **Granted**    ◻ Denied      ◻ **Dismissed**    ◻ Awarded by Default
         ✖ **Judgment to enter for:**
           ✖ **Plaintiff**    ◻ **Defendant**    ◻ **Applicant**    ◻ **Respondent**
           ◻ In the amount of $ _____  ◻ Cost in the amount of $ _____
         ✖ Pursuant to the terms of the settlement as set forth on the record and so ordered at today's
hearing, and injunctive relief having been agreed to and granted jointly and severally against defendants K-Line
Electric Trains, Inc., MDK inc., as well as against defendants Maury Klein and Robert Grubba who are also jointly
and severally liable, and pursuant to the record of the proceedings the parties have been directed to submit
implementing and supplementing documentation and orders consistent with the terms of the agreed-upon
settlement.

**BY THE COURT**              **FOR THE COURT:** Kathleen Farrell, Clerk

**/Burton R. Lifland**          **1:30 p.m.**    **August 9, 2005**    By **/s/ Mary Lopez**
**United States Bankruptcy Judge**     **Time**        **Date**         **Deputy Clerk**

Exhibit F

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4

   — — — — — — — — — — — — — — — — — x

5                In the Matter

6                    of                 Case No.

7                                       04-17324

             LIONEL LLC., et al

8

                     Debtor.

9   — — — — — — — — — —   — — — — — — — x

10                August 15, 2005

11                United States Custom House

                  One Bowling Green

12                New York, New York 10004

13  Conference Meeting

14

    B E F O R E:

15          HON. BURTON R. LIFLAND,

                    Bankruptcy Judge.

16

17

18

19

20

21

22

23

24

25

2

```
 1                    LIONEL, LLC
 2    A P P E A R A N C E S:
 3

           O'MELVENY & MYERS, LLP
 4             Attorneys for Lionel
               7 Times Square
 5             New York, New York 10036
 6         BY: ADAM C. HARRIS, ESQ.
                    -and-
 7             DALE M. CENDALI, ESQ.
 8
 9         RIVKIN RADLER, LLP
               Attorneys for K-Linem MDK, Klein,
10             Grubba
               EAB Plaza
11             Uniondale, New York 11556
12         BY: MICHAEL P. VERSICHELLI, ESQ.
                    -and-
13             CELESTE M. BUTERA, ESQ.
14
15     HALPERIN BATTAGLIA RAICHT, LLP
               Attorneys for Creditors Committee
16             555 Madison Avenue
               New York, New York 10022
17
           BY:  ALAN D. HALPERIN, ESQ.
18
19
20
21
22
23
24
25
```

3

LIONEL, LLC

P R O C E E D I N G S

1
2
3  THE COURT:  Basically, this
4  conference was called at the request of
5  O'Melveny pursuant to their requesting letter
6  of August 11th.  The Court's been reading with
7  interest all the correspondence back and forth
8  and I'll let you speak first.
9  MS. CENDALI:  Thank you, your
10 Honor.  Dale Cendali on behalf of the debtors,
11 Lionel Trains.  We are very concerned that we
12 are being deprived of a basic tenant of what we
13 thought we had accomplished in the settlement.
14    As Lionel's press release indicated,
15 our primary objective was to make clear to the
16 world that they illicitly had taken Lionel's
17 technology, advertised as their own when it
18 was, in fact, Lionel's technology.  We thus see
19 -- and for that, we were willing to trade
20 other kinds of consideration in order to make
21 sure that that was clear to the world.
22    Instead, they issue a press release
23 where they continue to state, among other
24 things, to deny that the technology was really
25 Lionel's technology.

4

1                    LIONEL, LLC

2              For example, rather than admitting

3    that he was not hired to develop advances on

4    Lionel technology, they tried to take the

5    position that Mr. Pierson wasn't hired to

6    develop advanced versions of Lionel technology

7    even though all the documentation plainly

8    indicates the circuitry, the software, et

9    cetera shows that that's not only what they

10   did, but that's what, in fact, the ungarnished

11   undisputed truth of the matter is.

12              Moreover, they go so far as to take

13   a statement from our briefs that I'm sure your

14   Honor is aware of where we have pointed out

15   what they have been able to do to harm Lionel

16   was to offer our technology at cheaper prices

17   because they didn't have to spend the years on

18   the R and D and the money on the R and D.  They

19   were just able to get it and yet they continue

20   to argue K-Line offers superior technology at a

21   considerably lower price.  We will maintain

22   that leadership, thereby specifically making

23   the point to the world, completely taking that

24   line out of context and a complete and material

25   breach of the settlement where they were

5

1                    LIONEL, LLC

2    supposed to admit that they took Lionel's

3    technology; that Lionel's technology was in

4    their products and that it is Lionel's

5    technology.

6              They are continuing to spin this as

7    if K-Line had the superior technology when that

8    is manifestly not true.

9              In addition, your Honor, they

10   continue to leave out key things, such as the

11   fact that pursuant to the permanent injunction,

12   they are to no longer ever sell these products

13   ever again.

14             Instead, they say, well, K-Line will

15   continue to deliver all products with the

16   sound, speed, control and transformer

17   technology at issue and pay a royalty to Lionel

18   through January 31, 2006.

19             Nowhere in there does it say,

20   especially as artfully as the bullet point was,

21   nowhere in there does it say by the way we are

22   not going to able to sell those products

23   anymore.  We are discontinuing them.

24             It suggests that the royalty may end

25   at that point but they don't say anywhere they

6

1                    LIONEL, LLC

2    are going to discontinue the products.

3              In fact, it goes on to suggest they

4    are already working on upgrades of the product

5    where again the whole concept of an upgrade

6    suggests, one, that they are going to be

7    continuing with the product and just coming out

8    with upgraded versions of the product, which

9    they are not allowed to do and, two, suggest

10   maybe they are going to go back and continue to

11   use our upgrade in these upgrades rather than

12   go back to square one.

13             Then they completely twist a

14   provision which was part of the agreement was

15   the idea that they mention to us that they had

16   some patents on file for control technology.

17             We don't know what those patents

18   are.  We haven't seen those patents, but in the

19   course of settling the case, rather than have

20   to decide then and there show me the patents

21   and let's try to figure out whether these

22   patents had anything to do with the secret

23   information that our engineers, Mr. Pierson and

24   Mr. Grubba, took with them to your company, we

25   just said, fine.  License those to us so there

7

LIONEL, LLC

1

2    is no issue further down the road with regard

3    to those patents.

4            Instead, they are trying to spin

5    that as the equivalent of Microsoft announces

6    that it entered into a licensing arrangement

7    with, you know, this entity to try to put them

8    in a better position of looking like they're

9    the technology leader; that maybe they just got

10   caught on some sort of minor contractual issue,

11   but, essentially, the story they are spinning

12   to the world is that they did nothing wrong.

13   Maybe there was no technical glitch because of



14   the employment contract but essentially they

15   are continuing to tell the world that it is

16   their technology; that it is superior to Lionel

17   and that's in breach of the material terms of

18   the agreement.

19            There is also on a -- everything

20   I've just said relates to breaches of the terms

21   and the statements with regard to who did what

22   to whom and whose technology it is, but there

23   is also an apparent issue of perhaps not having

24   a meeting of the minds on at least two points

25   in the sense that, as we thought was very

LIONEL, LLC

1
2  clear, that in exchange for not making them to
3  do an immediate recall they were supposed to
4  have just a limited sell-off period.
5        My comments to the report indicated
6  they won't have any other right other than to
7  sell off what they already had in stores,
8  whatever they had in inventory and instead they
9  are apparently giving the impression to the
10  marketplace that they have the ability to go
11  and manufacture and goose the market with more
12  stuff, which we would never in a million years
13  ever agreed to.  This is just uncommon in trade
14  secrets in other IP cases, giving them a
15  limited sell-off of the inventory they had.
16        In addition, even though again we
17  thought it was clear that there was to be joint
18  and several liability on the part of the three
19  defendants with, as your Honor may remember, a
20  pledge of stock of the individual defendants,
21  Mr. Halperin, counsel for the Creditors
22  Committee, even referred to that specifically
23  in his part of the testimony.
24        They are not denying that there was
25  ever any agreement with regard to joint and

```
 1                     LIONEL, LLC
 2   several liability, which, again, if true, shows
 3   that there wasn't a meeting of the minds on
 4   that material issue.
 5              So the bottom line, your Honor, is,
 6   you know, we wish we weren't here.  We feel
 7   embarrassed.  We feel frustrated that we have
 8   had to write to your Honor again on this issue,
 9   but we felt that we had no choice in the matter
10   because we thought that the settlement that we
11   had crafted was materially breached and
12   undermined by what they have done and we are
13   thus here asking for either two potential forms
14   of relief.
15              One, that the settlement, especially
16   since there is apparently some issue as to all
17   the terms, be vacated so that we can then go
18   back to square one and schedule, either have
19   the full fledge hearing or we are prepared to
20   argue it orally right now or that there be some
21   other mechanism that the Court might construct
22   to make clear whose technology it is.
23              THE COURT:  Well, they have offered
24   to publish a retraction.
25              MS. CENDALI:  It would have to be a
```

1                    LIONEL, LLC

2    very clear retraction similar, I do a lot of

3    newspaper work, too, and at this point, a

4    retraction would have to be very clear that

5    when we said this, that wasn't correct.  What

6    we meant to say was this or to the extent we

7    said this, what the real truth of the matter is

8    this.

9              It doesn't help to do as they are

10   suggesting how about if we just sort of release

11   a long list of terms and let the market maybe

12   try to figure out what it all means.

13             It has to be a true retraction, as

14   your Honor is suggesting, that really makes

15   clear that when they say things like K-Line

16   technology, Lionel admits that K-Line

17   technology is superior to and cheaper than

18   Lionel it really makes clear what's going on.

19   That's our position.

20             MS. CENDALI:  If I may permitted to

21   add one thought, your Honor.

22             My client, Mr. Colbry, really was

23   also very troubled beyond the specific terms

24   and things in the press release by the overall,

25   as he puts it, kind of unrepentant tone and

11

1                    LIONEL, LLC

2    feeling of lack of admission of doing anything

3    wrong, and that's also extremely troubling and

4    not what he thought he was getting.

5              MS. BUTERA:  Thank you, your Honor.

6    Celeste Butera and I represent the defendants.

7              First, your Honor, we'd like to talk

8    about how we got here and then I will address

9    the offer that we have placed on the table and

10   why we have placed that offer on the table.

11             First, I mean, the parties had a

12   settlement.  It was read into the record.  The

13   terms are in the record for all to see.

14   Everyone has, I think, up until this point now

15   at least as of this point now has the terms

16   that were read on to the record.

17             The press release by K-Line was

18   issued in response to Lionel's press release

19   and Lionel's press release had some

20   inaccuracies contained in it that K-Line was

21   being damaged by and wanted to rectify.  They

22   are in my letter.

23             The first one is that the defendants

24   admitted that they paid Lionel's chief engineer

25   to develop advanced versions of Lionel

12

1          LIONEL, LLC

2    operating systems and features that were used

3    in a number of K-Line's engines.  That was, of

4    course, not an admission that was made.

5              There was, as the Court knows, a

6    specific consent judgment that the defendants

7    agreed to in exchange for the license that they

8    were getting to manufacture and sell the

9    products through January 31st.

10              THE COURT:  Was this press releaseed

11    on the part of K-Line done in consultation with

12    the law firm?

13              MS. BUTERA:  Your Honor --

14              THE COURT:  Maybe you don't want to

15    answer that.  I don't know because I will tell

16    you right now I've been exposed to everything,

17    including what everybody else in the

18    marketplace has and the conclusion that any

19    person from Mars, including this judge, was and

20    is that that statement and the press release is

21    materially false and misleading, and, indeed,

22    it does indicate that there has been apparently

23    on some very key issues a lack of meeting of

24    the minds, and we need to know further if

25    you're still going to take the position that

1                        LIONEL, LLC

2    this very carefully constructed press release,

3    which seems to evade the intent of all the

4    parties and what the Court understood and the

5    Creditors' Committee understood was the nature

6    of the settlement.

7                If that's the case, then simply we

8    need to go no further.  If there is, indeed, a

9    lack of the meeting of the minds I can vacate

10   the settlement and go forward.

11               MS. BUTERA:  Your Honor, if I may,

12   your Honor.

13               There clearly is from the terms that

14   are set forth in the transcript, there clearly

15   is a meeting of the minds.  There is no

16   prohibition.

17               THE COURT:  Well, there seems to

18   have been some hidden agenda or some hidden

19   purpose that now seems to have played itself

20   out in the press release that came out.

21               Frankly, I was kind of surprised

22   because it did make it appear to that

23   euphemistic person from Mars that K-Line didn't

24   do anything wrong; that there wasn't any

25   misappropriation and that Lionel's technology

14

1                    LIONEL, LLC

2   was appropriately being utilized by K-Line.

3            If that's the position or the

4   intention that is intended to create, then we

5   should really go forward with the trial.

6            MS. BUTERA:  Your Honor, that is

7   simply not true.

8            THE COURT:  I will give you the

9   opportunity to make that point.

10           MS. BUTERA:  Your Honor, that is

11  absolutely not the position of the defendants,

12  and what the defendants want the Court to

13  understand is that they very clearly intend to

14  comply with the settlement agreement.  That

15  they have no intention of breaching it.

16           THE COURT:  Then you tell me how

17  mechanics could be put into place to avoid what

18  appears to be an unexpressed reservation of

19  agenda?

20           MS. BUTERA:  Your Honor, we think

21  that very clearly a retraction can be put into

22  place and the precise terms of the settlement

23  that was read on to the record could be

24  published along the lines of the proposal that

25  we have made, which basically just bullets



15

1                     LIONEL, LLC

2   points right from the transcript so there can

3   be no spin placed on this.  That's really what

4   we are talking about here, a spin that was

5   placed on it.

6             THE COURT:  There may be damage

7   already occurred by that press release and it's

8   been expressed in all of this correspondence

9   that there is some confusion in the marketplace

10  as a result of this.

11            MS. BUTERA:  Your Honor --

12            THE COURT:  This is an element of

13  damage here.

14            MS. BUTERA:  Your Honor, if that is

15  truly the case, which we would like to fully

16  brief this issue, if that is truly the issue,

17  we are not saying that it is, but if it is,

18  certainly a retraction and a publication of the

19  precise terms that were agreed upon in court

20  transcribed so that there can be no mistake as

21  to what was said and what wasn't said would

22  fully rectify it.

23            THE COURT:  Since the Court is a

24  participant on how to make a finding that this

25  settlement was in the best interest of the

16

1                          LIONEL, LLC

2     estate, any kind of retraction it would appear

3     to me should be a joint press release agreed to

4     by both sides so that there are no further

5     press releases to put any kind of spin on it.

6               But further than that, the Court is

7     concerned that when I so ordered the record

8     with respect to a consent judgment and what I

9     understood to be material terms that were part

10    of that order, that record that was so ordered,

11    that those be implemented immediately so that

12    there was no further side-stepping.

13              For example, there is no reason why

14    some of the elements of the settlement cannot

15    be papered immediately, but we agree.

16              THE COURT:  A promissory note, for

17    example, the security for the promissory note.

18              MR. BUTERA:  But we agree.

19              THE COURT:  The statement or

20    acknowledgment who has the rights to

21    technology, all of this can be done today.

22              MS. BUTERA:  We agree, your Honor,

23    and the very next day called to determine where

24    the paperwork was so we could make sure that

25    that was, in fact, put in place right away and

17

LIONEL, LLC

1

2    we would be more than willing to work with

3    O'Melveny in getting an appropriate press

4    release and we would agree that there should be

5    no other press talking about the settlement in

6    any way, shape or form.

7            THE COURT:  What about documentation

8    executed forthwith?

9            MS. BUTERA:  We would certainly

10    agree to that, your Honor.

11            MS. CENDALI:  Your Honor,

12    interestingly enough we have asked them and

13    said as a basic part of the settlement we

14    pressed them we needed to have immediately the

15    next day the documentation showing that the

16    collateral that was as you know a big part of

17    the hearing really existed and that we weren't

18    in an illusory situation being told that

19    Mr. Grubba was pledging stock that he really

20    didn't have and wasn't there.

21            We didn't receive any of this

22    documentation.  We didn't receive anything on

23    the collateral.  That's one point.

24            Second, Miss Butera did not indicate

25    or address the basic problems we have with

1                          LIONEL, LLC

2       regard to the lack of meeting of the minds.

3                 Her statement to you, your Honor,

4       just now indicated that she has the belief that

5       her client may continue to manufacture and

6       flood the market with more goods when we

7       thought it was clear that all they had was a

8       limited sell-off period so that they wouldn't

9       have to have --

10                THE COURT:  If we are going forward,

11      I can deal with that issue very easily but

12      that's interpretation.

13                MS. CENDALI:  It is not a question

14      of interpretation.  It is what we thought the

15      deal was.

16                THE COURT:  I'm not talking about

17      that.  I'm talking implementing certain

18      elements of Rule 65.

19                You want to be heard, Mr. Halperin?

20                MR. HALPERIN:  Please, your Honor.

21      That is a very, very important and material

22      point and there is no way we got to it but we

23      got to it a little faster than I expected.

24                From the Committee's perspective the

25      cessation of manufacturing of infringing goods

19

1                    LIONEL, LLC

2  particularly inasmuch as we are going to be

3  approaching the Christmas season very soon and

4  preventing K-Line's uses of Lionel's technology

5  from flooding the markets, people say, look,

6  the K-Line engine sells for several hundred

7  dollars less, I will buy that because the

8  budget is a little tight this year, than the

9  Lionel's version, this is a hugely important

10  issue from the Committee's perspective.

11            This goes to the value of Lionel.

12  This goes to the value that was generated at

13  some point for the creditors and we are very

14  concerned that this is an enormous issue and

15  would enormously impact Lionel.

16            It was clear to us on Friday and

17  last week, and if this is not clear here, that

18  there is no meeting of the minds; that there

19  was to be no more manufacture.

20            I will even go a step further and

21  advise the court from the Committee's

22  perspective, we had discussed with the debtor

23  what about pulling the infringing goods from

24  where they were.  We were told that, in fact,

25  they can't because these are true sales to the

1                      LIONEL, LLC

2    various distributors but we were assured it was

3    a very limited number.

4              This would totally vitiate the

5    settlement if they had the ability to continue

6    to manufacture infringing goods and sell it

7    into the market.  There would be no meeting of

8    the minds.

9              Two other points I want --

10             THE COURT:  It was this Court's

11   impression with respect to the settlement that

12   it involved just working through the existing

13   inventory.

14             MR. HALPERIN:  That is what we had

15   consented to.  Judge, there were two other

16   points I just wanted to note quickly.

17             First, there is a statement in one

18   of the K-Line's letter, and I apologize because

19   there were so many flying I may not have it

20   properly identified, but there is a statement,

21   "This court is aware no such admission

22   contained in the first bullet point above is

23   part of the settlement."

24             Second, there are no money damages

25   awarded to Lionel and Klein and Grubba and they

21

1                    LIONEL, LLC

2   agree to be jointly and severally liable for

3   any money damages awarded to Lionel.

4              Well, after the Court had indulged

5   us for a brief recess to address the collateral

6   issue when I had addressed the Court to the

7   fact the committee was finally okay with the

8   terms we have accompanying as collateral -- let

9   me find the page.

10              Page 31 of the transcript I had

11  addressed the Court, and five or six lines into

12  the comments that I made, I indicated the joint

13  and several obligation will also be

14  collateralized by Mr. Grubba's interest in

15  Broadway, Ltd. and Precision Scale model to the

16  extent legally possible.  We go on.

17              Now, your Honor, when we concluded

18  that subsequent little piece, your Honor went

19  back to the defendants and said to them again:

20  "Mr. Grubba and Mr. Klein, is that your

21  understanding that's just been described into

22  the record?"

23              "MR. GRUBBA:  Yes.

24              "MR. KLEIN:  Yes."

25              And then the Court was concerned

22

1                    LIONEL, LLC

2     that one of them couldn't be heard and again

3     they reiterated yes, and your Honor so ordered

4     the record.

5              So to now say there was no joint and

6     several obligations and we are talking up to a

7     $700,000 monetary issue is just wrong.  It is

8     inaccurate and it is wrong.

9              There is also a statement in the

10    Rivkin letter I'm assuming was nothing more

11    than an error in typing, but there was, one of

12    the letters contained a list of points, and I

13    suppose this was to be the subsequent press

14    release, and if your Honor looks at paragraph

15    11 on page 2 of that substitute press release.

16              THE COURT:  I had noticed it.  I

17    have it outlined as well.

18              MS. BUTERA:  Precision was left out

19    as well.  I'm assuming it was a typo, but it

20    was transcribed right from the court record,

21    your Honor, by a secretary and looks like some

22    words were messed up.

23              MR. HALPERIN:  We were all very

24    clear on the record.  I assumed it was a typo,

25    but it is --

23

                        LIONEL, LLC

1

2              THE COURT:  There is also a negative

3    in that paragraph that I don't think was

4    intended.

5              MR. HALPERIN:  Suffice to say we are

6    in agreement with your Honor's interpretation.

7              Miss Cendali did a very good job of

8    the back and forth.  We read the transcript.

9    We read the press release.  We think there are

10   a lot of inaccuracies here and we do have a

11   concern there's no meeting of the mind.

12             MS. BUTERA:  Your Honor, may I

13   briefly respond, please.

14             This issue on manufacturing of sale,

15   these are the words that were used to outline

16   the settlement on the record.

17             Now, the first, at the very outset

18   of what was going to be agreed upon it says

19   that the consent judgment will enjoin them, the

20   defendants, from making or selling any

21   products, from making or selling any products

22   containing Lionel technology at issue in this

23   case specifically, and it lists the products

24   and then it says this injunction though will

25   not go into effect until January 31 of 2006.

24

1                    LIONEL, LLC

2          Now, the reason that's important is

3    because when we, indeed, were negotiating the

4    settlement, there was discussion about how we

5    could have a transition period through January

6    31, 2006, at which point, indeed, the

7    defendants would stop all making, selling,

8    anything to do with the products.

9          However, there were some products

10   that were in the production line so that

11   production had already commenced and so that

12   was why the injunction was not going to go into

13   effect until January 31, 2006.

14         So before when we were having this

15   discussion, and I said that's an interpretation

16   issue because the language is here, and this

17   was language that the plaintiff's counsel put

18   together when we were documenting what the

19   meeting of the mind was of the parties.  So,

20   your Honor, there has been a meeting of the

21   minds.

22         You know, to the extent they are

23   trying to change the terms, that's a completely

24   different issue but clearly there was a meeting

25   of the minds. There was --

```
 1                    LIONEL, LLC
 2              THE COURT:  I can't fully agree with
 3    that because as the court arbitrator here it
 4    was the Court's impression that the January,
 5    2006 date was to give you time to work through
 6    just the inventory but that you weren't going
 7    forward because if that was not the case then
 8    inventory could have been manufactured in
 9    December of 2005 and still probably or possibly
10    could be sold thereafter.
11              So it does appear that if that's
12    your position, then maybe there was no meeting
13    of the mind.
14              MS. BUTERA:  I don't think so, your
15    Honor, because, again, the defendants -- this
16    was language that was specifically worked out
17    with the other side now.
18              If they are saying that their view
19    of those words is that it was only going to be
20    selling, well, then, that's something that we
21    will have to address.
22              MS. CENDALI:  Well, what was said to
23    the court record at this point, your Honor, by
24    me was that after they admitted that
25    Mr. Pierson was inappropriately hired by
```

26

1                      LIONEL, LLC

2    Lionel, that Lionel technology was used without

3    Lionel's permission, that Lionel technology

4    was, in fact, used in K-Line's products and

5    that the technology was owned by Lionel, I then

6    said that and K-Line has no right, title and

7    interest in that technology other than their

8    right to continue sales through January 31,

9    2006, to continue sales.  That was the only

10   right they were to continue on that.

11             THE COURT:  On this issue, it does

12   appear that there was a lack of the meeting of

13   the minds.  So unless the parties can agree on

14   a joint statement, resolve this issue, and I

15   will give you five minutes to confer, we will

16   resume this conference, which has been called

17   for the purpose of implementing Rule 65, which

18   as I indicated I am prepared to do in many

19   different respects.

20             MS. BUTERA:  Okay, your Honor.  We

21   will confer.

22             THE COURT:  Are there any other

23   areas or issues that you want to deal with?

24   There is one issue that you should consider and

25   that's the Court's issue.

27

1                    LIONEL, LLC

2              In view of the fact that there does

3    seem to be a history here of a gray area under

4    which parties are operating, and now I'll say

5    this for both sides, the Court's quite

6    concerned that anything that is agreed upon

7    that you work out be capable of being monitored

8    and implemented immediately.

9              So we don't have to come back, and

10   that is some of the documentation can be and

11   should be executed forthwith and, as I

12   indicated, it seemed to me that the easiest

13   thing to deal with is to paper the promissory

14   note and the collateral that's supposed to be

15   working with that.

16              MS. BUTERA:  Okay.  Thank you.

17              THE COURT:  And that includes the

18   immediate transmission of the appropriate

19   information that had been requested with

20   respect to the collateral.

21              MS. BUTERA:  Yes, your Honor.  We

22   will, with all due respect.

23              (A recess from the record was

24   taken.)

25              THE COURT:  Ladies and gentlemen.

28

1                    LIONEL, LLC

2              MS. CENDALI:  Hello, your Honor.

3    Would you like me to report on the last

4    extended five minutes?

5              THE COURT:  Sure.

6              MS. CENDALI:  I'm hopeful that the

7    parties have worked out their remaining

8    differences.

9              Dealing first with the deal terms on

10   the subject of joint and several liability, the

11   concept is that the individual defendants would

12   stand behind the obligations, the exact words

13   as to how that is going to be worked out will

14   be agreed to in consultation with the

15   Creditors' Committee, but the concept that they

16   will be liable will stand behind the

17   obligations is a material point of the

18   settlement.

19             Second, with regard to the point on

20   manufacturing, K-Line and Lionel and the other

21   defendants have agreed to your Honor entering

22   right now a new or modified preliminary

23   injunction or a permanent injunction actually

24   making clear that defendants are prohibited

25   from manufacturing any more of the infringing

29



1                        LIONEL, LLC

2    products.

3            There is an issue that has arisen as

4    to products that they may have already

5    completed and might possibly be on a boat from

6    Asia.  They are going to provide us with

7    information tomorrow as to the unit of those

8    products.

9            Our impression was that this was a

10   very small number.  If it turns out to be a

11   very small number, I don't think we will have

12   an issue and we will let the products that are

13   on the boat arrive and be sold during the

14   sell-off period.

15           If it turns out that it is a bigger

16   number than anticipated, we may have to go back

17   to the table a little bit about that, but in

18   any case, the concept is that the parties, the

19   defendants have consented to your Honor's entry

20   today of an injunction making clear that they

21   are not to manufacture any more of the

22   infringing products.

23           Another point counsel points out is

24   that there may be some products at the

25   warehouse at Sanda Kan in Asia that have been

30

LIONEL, LLC

1

2  completely finished but have not yet been put

3  on the boat and again the same principal

4  holds.

5          If we are only talking about a de

6  minimis amount of product, then we don't have

7  an issue of that but what we are really

8  concerned about is making sure there is not a

9  loophole to flood the market with newly

10 manufactured goods.

11         With regard to papering the deal, we

12 need to see right away the material with regard

13 to the collateral to make sure that that is an

14 illusory form of consideration for us and they

15 promised to do that.

16         We also agreed to be able to get to

17 them the notes and the other documentation that

18 would be this to try to get as much of the deal

19 in place as quickly as possible, and then,

20 finally and from our point of view, probably of

21 most material importance is that the parties

22 have agreed to work on a joint press release

23 that will be issued as soon as possible that

24 will -- and we have also agreed that the nature

25 of the press release in light of the fact that

31

LIONEL, LLC

1
2  there's already the pre-existing K-Line press
3  release that's caused confusion and damage in
4  the marketplace, that the joint release will do
5  more than just simply recite the terms of the
6  deal but will affirmatively help to clarify for
7  the public the nature of the deal and what the
8  parties had intended in order to make sure that
9  the misimpressions that had been generated have
10 been clarified.
11          The idea though is that we will get
12 reasonable comments and talk back and forth and
13 try to come up with something that does undue
14 the harm that was done.
15          We have also agreed that we will
16 agree that in the settlement agreement there
17 will be a new form -- that the release will be
18 extended to include any release that people may
19 have with regard to press releases, and we're
20 committed to working on that in very short
21 order because, again, from Lionel's point of
22 view, the message out there to the public was
23 the central reason that it had agreed to the
24 settlement; and if we cannot reach agreement
25 later today on that, effectively there has not

32

1                       LIONEL, LLC

2    been a deal.

3              But I'm very hopeful with the

4    parameters we have worked out in the hallway

5    that we do have an understanding and that we

6    will be able to put pen to paper and discuss it

7    and end up with a final resolution, your

8    Honor.

9              THE COURT:  Does anyone else want to

10   be heard?

11             MS. BUTERA:  Your Honor, just very

12   briefly.

13             What we have agreed to work on has

14   been accurately reflected.  I just want to

15   clarify two quick points.

16             The joint several liability issue

17   was as to the note and that language is going

18   to be detailed in the note that is going to be

19   provided from MDK to the plaintiff debtor.

20             The only other thing was on the

21   press release.  We have agreed that we will

22   work on a joint press release which seeks to

23   clarify any statements that have been perceived

24   to be inaccurate or misleading by the plaintiff

25   debtor.  Thank you, your Honor.

33

LIONEL, LLC

1

2          THE COURT:  Anyone else want to be

3   heard?

4          MR. HALPERIN:  Your Honor,

5   obviously, the settlement is going to be in the

6   details but I think it was fairly explicitly

7   detailed in the discussion in the hallway as to

8   what the shape and the form of the press

9   release will be.  I am hopeful that we will be

10  able to get over this.

11          In terms of the words "joint" and

12  "several liability," we will look at the

13  documents.  Everybody knows it is what it is.

14          The Committee has no issue of

15  granting a release with the things that have

16  happened through this date in terms of what

17  people may see as future breaches or anything

18  of that nature.

19          The law is what it is, if it ever

20  comes up.  Hopefully, it won't.

21          MS. BUTERA:  I forgot to mention one

22  other thing.

23          May I be heard for one other

24  moment?

25          THE COURT:  Sure.

34

1              LIONEL, LLC

2              MS. BUTERA:  The Court had mentioned

3    no further press releases and we would

4    absolutely be in agreement on that as well.

5              MS. CENDALI:  There has been no

6    discussion in the hallway on the subject of no

7    further press release.

8              What we talked about we don't

9    envision any further press release but we have

10   to deal with the fact we are in the world where

11   the executives are asked to comment and give

12   lots of questions on this.

13             Lionel cannot be put in a position

14   of never being able to make any comments with

15   regard to this case when asked by the

16   innumerous people out there in the trade press

17   on this.

18             I think comments need to be

19   consistent with the ultimate joint press

20   release that is agreed to.  That's fair, but we

21   will not consent, your Honor, to a gag order, a

22   gag order, of your own, then we would, but a a

23   gag order suggested by defendants on our

24   ability to answer truthfully questions, and

25   that was not something we had agreed to.

35

LIONEL, LLC

1

2     THE COURT:  Well, if you implement

3  an appropriate press release, and you are not

4  far from that when you use as a basic the

5  proposed press release from the defendant as

6  sort of a cornerstone, you can build around

7  that and, no, I will not issue a gag order but

8  it would seem to me that you should take the

9  time and trouble with all the talent that's

10  here putting together a press release that does

11  not require further elaboration back and forth,

12  charges and countercharges and reexplanation.

13  It seems to me that we all should be capable of

14  doing that.

15     MS. BUTERA:  Thank you, your Honor.

16     THE COURT:  But I have another

17  problem with all of this.

18     We're here again and again and again

19  papering.

20     This is apparently something that

21  should not not take a long period of time but

22  in view of the polarity that has occurred in

23  getting to this particular point, I am still

24  quite concerned about the ability to put this

25  together very quickly and appropriately.

36

LIONEL, LLC

1

2          The conditions precedent to a full

3     agreement are somewhat subjective.  The concept

4     of having to be satisfied or reviewing

5     proposals or understanding as to where things

6     are or are not are such that I don't know that

7     you really have an agreement today.

8          Accordingly, I'm going to schedule a

9     hearing for purposes of the preliminary

10    injunction for a week from Wednesday.

11          If in the interim the parties put

12    together the settlement, the agreement and do

13    all of the documentation, you can let the Court

14    know and we don't have to go forward.

15          One of the reasons I'm putting this

16    imperative on all of you is that at the prior

17    hearing witnesses were here.  There was a trial

18    ready to proceed.  Witnesses were brought in

19    from out of the country.  They are no longer

20    here.  There is the allegation that there's

21    been a material breach and it is not merely a

22    colorable allegation.

23          If there is one that has a fair

24    amount of substance to it so that in the event

25    that there cannot be an agreement, as I

37

LIONEL, LLC

1 indicated early this morning and

2 parenthetically we will talk about early this

3 morning, this has not been a five minute recess

4 although the record only says that.

5          It is several hours since I gave you

6 five minutes and the court reporter is looking

7 at his stomach and wondering why he's still

8 sitting here, but in view of all of that, I

9 indicated to you that I was concerned about

10 Rule 65.

11          If in the interim now and a week

12 from Wednesday, which will be a rule 65 10-day

13 period unless I miscalculate, it is of concern

14 that the parties are not prepared to come to a

15 complete accord, in other words, subjective

16 terms that have been spelled out here have not

17 been agreed to, you can contact the Court and

18 based upon the entirety of the record to date,

19 including all the correspondence, the hearing

20 we had last week and today's conference, this

21 Court would be receptive to entertaining a

22 request for a temporary restraining order.

23          MS. BUTERA:  Your Honor, may I just

24 ask, I have every belief that the parties



38

1              LIONEL, LLC

2   indeed will be able to arrive at a complete and

3   final deal with all appropriate paperwork, et

4   cetera, but I would just ask that at that time

5   if there is going to be a hearing, at that

6   time, the defendants not now but could at that

7   time renew any motions that has been pending

8   before your Honor as well?

9              MS. CENDALI:  I don't understand

10  what that's a request for.  The only motion I'm

11  aware of is our motion --

12             THE COURT:  They have a motion with

13  respect to discovery, and that motion is

14  completely muted by the settlement that took

15  place at that time and I don't know that it is

16  acceptable of being renewed de novo because the

17  facts it was now based on is extinct, so your

18  application is denied.

19             MS. CENDALI:  The only other thing I

20  wanted to make clear, your Honor, in the

21  hallway we had mapped out in some detail

22  exactly what the proposed press release was

23  going to be and the parameters that the parties

24  had agreed as to what would be acceptable to

25  them, and I believe there is no shortage of

39

LIONEL, LLC

1

2  lawyers who would be witnesses to that, and the

3  press release that we will ultimately agree on

4  needs to be consistent.

5       THE COURT:  I've given you as a

6  marker a date, a week from Wednesday.

7       MS. CENDALI:  That is right.

8       THE COURT:  If it all apparently

9  comes close to some accord, although as I

10  pointed out many of the conditions to an accord

11  are somewhat subjective, so, therefore, you

12  really don't have a settlement today, I'm

13  giving you the opportunity to achieve what you

14  indicate in good faith you intend to achieve

15  and I hope you can do.

16       MR. CENDALI:  Thank you, your

17  Honor.  The only thing I believe we do have an

18  agreement that your Honor -- your Honor had

19  already issued an injunction last week and I

20  believe we do have an agreement with defendants

21  on consent for your Honor to modify that to

22  make clear that they are not entitled to

23  manufacture any of the products during this

24  sell-off period and we had agreed to that, that

25  your Honor would be doing that today.

40

1                    LIONEL, LLC

2           Counsel can correct me if I'm wrong

3    and I guess what I want to make sure is that

4    since I believe that was the understanding and

5    it would be on consent that that be obtained

6    today.

7           MS. BUTERA:  Your Honor, this is all

8    subject to agreement on all of these points and

9    we would immediately work to get that agreement

10   I would hope.

11          THE COURT:  Why don't you take

12   another five minutes, and if that's a very key

13   issue and, as I indicated, based upon an

14   appropriate request, I might consider a

15   temporary restraining order based upon the

16   entire record to date.

17          THE COURT:  Five minutes.  Off the

18   record.

19          (Discussion off the record.).

20          (A break from the record was taken.)

21          MS. CENDALI:  We did, your Honor,

22   and on behalf of all counsel, we ask you do

23   take judicial notice this time it was really

24   less than five minutes.

25          In any case, we have clarified our



41

1                    LIONEL, LLC

2   understanding and agreement that the parties

3   would like your Honor respectfully to issue a

4   consent decree in judgment -- a permanent

5   injunction on consent today amending your

6   previous order to that effect of last Tuesday

7   but making clear that they were to be enjoined

8   from any manufacturing during this for all

9   time.

10          However, we also want to make clear

11  that to the extent, we hope unlikely, but to

12  the extent that the settlement is not able to

13  actually be achieved with all the Is and Ts are

14  dotted and crossed, at that point obviously

15  there would not be an injunction on consent as

16  there wouldn't be a settlement; and at that

17  point while the consent judgment would still be

18  in effect so there is no gap period it would be

19  our intention to come to your Honor and

20  respectfully request that a TRO be executed

21  pending a preliminary injunction hearing.

22          In other words, we want to make sure

23  that the consent judgment on manufacturing is

24  input today as the parties had agreed while

25  recognizing that if the settlement disappears

42

1                    LIONEL, LLC

2    that judgment on consent would be effectively

3    dissolved at the appropriate time subject to

4    whatever injunction your Honor may wish to

5    issue later in the case.

6              THE COURT:  Well, we're operating in

7    that regard under Rule 65 so it is a 10-day

8    period.

9              MS. CENDALI:  That is right.

10              MS. BUTERA:  We understand.

11              THE COURT:  Let me hear from both

12    counsel as to the consent nature of the parties

13    all here.

14              MS. BUTERA:  Yes, your Honor.  That

15    is correct.  We are agreeing to that

16    preliminary injunction as to manufacture on

17    consent subject to the parties working out this

18    settlement, which it has been settled.  It is

19    just documenting it and agreeing to the press

20    release, the joint press release, your Honor.

21              THE COURT:  Well, that's fine for

22    me, too, so order this recorded and I am

23    prepared to so order the record and I think

24    that you should give me a document sometime

25    today because all of the papers, and I can

43

LIONEL, LLC

1
2  identify some of the items which are

3  proprietary by description, they come into

4  several categories, three or perhaps four, and

5  that should be part of the document that you

6  submit to me this afternoon.

7           But based upon this consent, the

8  principal is here.  Are both principals here?

9           MS. BUTERA:  Actually, your Honor,

10  Mr. Klein from MDK is here.  Mr. Grubba is not

11  here but we have a telephone number.  He's in

12  Florida and if we wished, we could get on him

13  on a conference call with the Court, but we

14  have spoken with him and he has consented and

15  we can represent that he has consented.

16           THE COURT:  Well, the consent at

17  this point is with respect to continued

18  manufacturing?

19           MS. BUTERA:  That's correct.

20           THE COURT:  And that's why the

21  corporate debtor.

22           MS. BUTERA:  Yes.

23           THE COURT:  Mr. Klein, do you

24  understand?  You've conferred with your

25  counsel?

44

```
 1                    LIONEL, LLC
 2              MR. KLEIN:  Yes.
 3              THE COURT:  And you are in full
 4    accord with the proposal?
 5              MR. KLEIN:  Yes.
 6              THE COURT:  And the prohibitions
 7    with respect to the continued manufacture of
 8    the items in question?
 9              MR. KLEIN:  Yes, I am.
10              THE COURT:  Again, this record is so
11    ordered.  Submit the following document.
12              MS. CENDALI:  Thank you, your
13    Honor.
14              MS. BUTERA:  Thank you, your Honor.
15              (Time noted:  1:25 p.m.)
16
17
18
19
20
21
22
23
24
25
```



45

```
 1                    LIONEL, LLC
 2            C E R T I F I C A T E
 3
 4          I, MICHAEL WILLIAMS, a Certified
 5   Shorthand Reporter and Notary Public of the
 6   State of New York do hereby certify that the
 7   foregoing is a true and accurate transcript of
 8   the within proceedings, to the best of my
 9   ability.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24        _____Michael Williams_____
          MICHAEL WILLIAMS, CSR
25        License No. XIO1991
```

**A**

ability 8:10 20:5
  34:24 35:24 45:9
able 4:15,19 5:22
  30:16 32:6 33:10
  34:14 38:2 41:12
absolutely 14:11
  34:4
acceptable 38:16,24
accompanying 21:8
accomplished 3:13
accord 37:16 39:9
  39:10 44:4
accurate 45:7
accurately 32:14
achieve 39:13,14
achieved 41:13
acknowledgment
  16:20
ADAM 2:6
add 10:21
addition 5:9 8:16
address 11:8 17:25
  21:5 25:21
addressed 21:6,11
admission 11:2 12:4
  20:21
admit 5:2
admits 10:16
admitted 11:24
  25:24
admitting 4:2
advanced 4:6 11:25
advances 4:3
advertised 3:17
advise 19:21
affirmatively 31:6
afternoon 43:6
agenda 13:18 14:19
agree 16:15,18,22
  17:4,10 21:2 25:2
  26:13 31:16 39:3
agreed 8:13 12:7
  15:19 16:3 23:18
  27:6 28:14,21

30:16,22,24 31:15
31:23 32:13,21
34:20,25 37:18
38:24 39:24 41:24
agreeing 42:15,19
agreement 6:14 7:18
  8:25 14:14 23:6
  31:16,24 34:4 36:3
  36:7,12,25 39:18
  39:20 40:8,9 41:2
al 1:7
ALAN 2:17
allegation 36:20,22
allowed 6:9
amending 41:5
amount 30:6 36:24
announces 7:5
answer 12:15 34:24
anticipated 29:16
anymore 5:23
apologize 20:18
apparent 7:23
apparently 8:9 9:16
  12:22 35:20 39:8
appear 13:22 16:2
  25:11 26:12
appears 14:18
application 38:18
approaching 19:3
appropriate 17:3
  27:18 35:3 38:3
  40:14 42:3
appropriately 14:2
  35:25
arbitrator 25:3
area 27:3
areas 26:23
argue 4:20 9:20
arisen 29:3
arrangement 7:6
arrive 29:13 38:2
artfully 5:20
Asia 29:6,25
asked 17:12 34:11
  34:15

asking 9:13
assumed 22:24
assuming 22:10,19
assured 20:2
Attorneys 2:4,9,15
August 1:10 3:6
Avenue 2:16
avoid 14:17
awarded 20:25 21:3
aware 4:14 20:21
  38:11

**B**

B 1:14
back 3:7 6:10,12
  9:18 21:19 23:8
  27:9 29:16 31:12
  35:11
Bankruptcy 1:2,15
based 37:19 38:17
  40:13,15 43:7
basic 3:12 17:13,25
  35:4
basically 3:3 14:25
BATTAGLIA 2:15
behalf 3:10 40:22
belief 18:4 37:25
believe 38:25 39:17
  39:20 40:4
best 15:25 45:8
better 7:8
beyond 10:23
big 17:16
bigger 29:15
bit 29:17
boat 29:5,13 30:3
bottom 9:5
Bowling 1:11
breach 4:25 7:17
  36:21
breached 9:11
breaches 7:20 33:17
breaching 14:15
break 40:20
brief 15:16 21:5

briefly 23:13 32:12
briefs 4:13
Broadway 21:15
brought 36:18·
budget 19:8
build 35:6
bullet 5:20 20:22
bullets 14:25
BURTON 1:15
Butera 2:13 11:5,6
  12:13 13:11 14:6
  14:10,20 15:11,14
  16:18,22 17:9,24
  22:18 23:12 25:14
  26:20 27:16,21
  32:11 33:21 34:2
  35:15 37:24 40:7
  42:10,14 43:9,19
  43:22 44:14
buy 19:7

**C**

C 2:2,6 3:2 45:2,2
call 43:13
called 3:4 16:23
  26:16
capable 27:7 35:13
carefully 13:2
case 1:6 6:19 13:7
  15:15 23:23 25:7
  29:18 34:15 40:25
  42:5
cases 8:14
categories 43:4
caught 7:10
caused 31:3
Celeste 2:13 11:6
Cendali 2:7 3:9,10
  9:25 10:20 17:11
  18:13 23:7 25:22
  28:2,6 34:5 38:9
  38:19 39:7,16
  40:21 42:9 44:12
central 31:23
certain 18:17

certainly 15:18 17:9
Certified 45:4
certify 45:6
cessation 18:25
cetera 4:9 38:4
change 24:23
charges 35:12
cheaper 4:16 10:17
chief 11:24
choice 9:9
Christmas 19:3
circuitry 4:8
clarified 31:10
  40:25
clarify 31:6 32:15,23
clear 3:15,21 8:2,17
  9:22 10:2,4,15,18
  18:7 19:16,17
  22:24 28:24 29:20
  38:20 39:22 41:7
  41:10
clearly 13:13,14
  14:13,21 24:24
client 10:22 18:5
close 39:9
Colbry 10:22
collateral 17:16,23
  21:5,8 27:14,20
  30:13
collateralized 21:14
colorable 36:22
come 27:9 31:13
  37:15 41:19 43:3
comes 33:20 39:9
coming 6:7
commenced 24:11
comment 34:11
comments 8:5 21:12
  31:12 34:14,18
committed 31:20
committee 2:15 8:22
  13:5 21:7 28:15
  33:14
Committee's 18:24
  19:10,21

company 6:24
complete 4:24 37:16
  38:2
completed 29:5
completely 4:23
  6:13 24:23 30:2
  38:14
comply 14:14
concept 6:5 28:11,15
  29:18 36:3
concern 23:11 37:14
concerned 3:11 16:7
  19:14 21:25 27:6
  30:8 35:24 37:10
concluded 21:17
conclusion 12:18
conditions 36:2
  39:10
confer 26:15,21
conference 1:13 3:4
  26:16 37:21 43:13
conferred 43:24
confusion 15:9 31:3
consent 12:6 16:8
  23:19 34:21 39:21
  40:5 41:4,5,15,17
  41:23 42:2,12,17
  43:7,16
consented 20:15
  29:19 43:14,15
consider 26:24
  40:14
considerably 4:21
consideration 3:20
  30:14
consistent 34:19
  39:4
construct 9:21
constructed 13:2
consultation 12:11
  28:14
contact 37:18
contained 11:20
  20:22 22:12
containing 23:22

context 4:24
continue 3:23 4:19
  5:10,15 6:10 18:5
  20:5 26:8,9,10
continued 43:17
  44:7
continuing 5:6 6:7
  7:15
contract 7:14
contractual 7:10
control 5:16 6:16
cornerstone 35:6
corporate 43:21
correct 10:5 40:2
  42:15 43:19
correspondence 3:7
  15:8 37:20
counsel 8:21 24:17
  29:23 40:2,22
  42:12 43:25
countercharges
  35:12
country 36:19
course 6:19 12:4
court 1:2 3:3 9:21
  9:23 12:5,10,14
  13:4,17 14:8,12,16
  15:6,12,19,23,23
  16:6,16,19 17:7
  18:10,16 19:21
  20:10,21 21:4,6,11
  21:25 22:16,20
  23:2 25:2,3,23
  26:11,22 27:17,25
  28:5 32:9 33:2,25
  34:2 35:2,16 36:13
  37:7,18,22 38:12
  39:5,8 40:11,17
  42:6,11,21 43:13
  43:16,20,23 44:3,6
  44:10
Court's 3:6 20:10
  25:4 26:25 27:5
crafted 9:11
create 14:4

creditors 2:15 8:21
  13:5 19:13 28:15
crossed 41:14
CSR 45:24
Custom 1:11

———————————
D
D 2:17 3:2 4:18,18
Dale 2:7 3:10
damage 15:6,13
  31:3
damaged 11:21
damages 20:24 21:3
date 25:5 33:16
  37:19 39:6 40:16
day 16:23 17:15
de 30:5 38:16
deal 18:11,15 26:23
  27:13 28:9 30:11
  30:18 31:6,7 32:2
  34:10 38:3
Dealing 28:9
debtor 1:8 19:22
  32:19,25 43:21
debtor's 3:10
December 25:9
decide 6:20
decree 41:4
defendant 35:5
defendants 8:19,20
  11:6,23 12:6 14:11
  14:12 21:19 23:20
  24:7 25:15 28:11
  28:21,24 29:19
  34:23 38:6 39:20
deliver 5:15
denied 38:18
deny 3:24
denying 8:24
deprived 3:12
described 21:21
description 43:3
detail 38:21
detailed 32:18 33:7
details 33:6

determine 16:23
develop 4:3,6 11:25
differences 28:8
different 24:24
    26:19
disappears 41:25
discontinue 6:2
discontinuing 5:23
discovery 38:13
discuss 32:6
discussed 19:22
discussion 24:4,15
    33:7 34:6 40:19
dissolved 42:3
distributors 20:2
DISTRICT 1:3
document 42:24
    43:5 44:11
documentation 4:7
    17:7,15,22 27:10
    30:17 36:13
documenting 24:18
    42:19
documents 33:13
doing 11:2 35:14
    39:25
dollars 19:7
dotted 41:14
due 27:22

E
E 1:14,14 2:2,2 3:2,2
    45:2,2
EAB 2:10
early 37:2,3
easiest 27:12
easily 18:11
effect 23:25 24:13
    41:6,18
effectively 31:25
    42:2
either 9:13,18
elaboration 35:11
element 15:12
elements 16:14

18:18
embarrassed 9:7
employment 7:14
engine 19:6
engineer 11:24
engineers 6:23
engines 12:3
enjoin 23:19
enjoined 41:7
enormous 19:14
enormously 19:15
entered 7:6
entering 28:21
entertaining 37:22
entire 40:16
entirety 37:19
entitled 39:22
entity 7:7
entry 29:19
envision 34:9
equivalent 7:5
error 22:11
especially 5:20 9:15
ESQ 2:6,7,12,13,17
essentially 7:11,14
estate 16:2
et 1:7 4:8 38:3
euphemistic 13:23
evade 13:3
event 36:24
everybody 12:17
    33:13
exact 28:12
exactly 38:22
example 4:2 16:13
    16:17
exchange 8:2 12:7
executed 17:8 27:11
    41:20
executives 34:11
existed 17:17
existing 20:12
expected 18:23
explicitly 33:6
exposed 12:16

expressed 15:8
extended 28:4 31:18
extent 10:6 21:16
    24:22 41:11,12
extinct 38:17
extremely 11:3

F
F 1:14 45:2
fact 3:18 4:10 5:11
    6:3 16:25 19:24
    21:7 26:4 27:2
    30:25 34:10
facts 38:17
fair 34:20 36:23
fairly 33:6
faith 39:14
false 12:21
far 4:12 35:4
faster 18:23
features 12:2
feel 9:6,7
feeling 11:2
felt 9:9
figure 6:21 10:12
file 6:16
final 32:7 38:3
finally 21:7 30:20
find 21:9
finding 15:24
fine 6:25 42:21
finished 30:2
firm 12:12
first 3:8 11:7,11,23
    20:17,22 23:17
    28:9
five 21:11 26:15
    28:4 37:4,7 40:12
    40:17,24
fledge 9:19
flood 18:6 30:9
flooding 19:5
Florida 43:12
flying 20:19
following 44:11

foregoing 45:7
forgot 33:21
form 17:6 30:14
    31:17 33:8
forms 9:13
forth 3:7 13:14 23:8
    31:12 35:11
forthwith 17:8
    27:11
forward 13:10 14:5
    18:10 25:7 36:14
four 43:4
Frankly 13:21
Friday 19:16
frustrated 9:7
full 9:19 36:2 44:3
fully 15:15,22 25:2
further 7:2 12:24
    13:8 16:4,6,12
    19:20 34:3,7,9
    35:11
future 33:17

G
G 3:2
gag 34:21,22,23 35:7
gap 41:18
generated 19:12
    31:9
gentlemen 27:25
getting 11:4 12:8
    17:3 35:23
give 14:8 25:5 26:15
    34:11 42:24
given 39:5
giving 8:9,14 39:13
glitch 7:13
go 4:12 6:10,12 8:10
    9:17 13:8,10 14:5
    19:20 21:16 23:25
    24:12 29:16 36:14
goes 6:3 19:11,12
going 5:22 6:2,6,10
    10:18 12:25 18:10
    19:2 23:18 24:12

4

25:6,19 28:13 29:6
32:17,18 33:5 36:8
38:5,23
**good** 23:7 39:14
**goods** 18:6,25 19:23
20:6 30:10
**goose** 8:11
**granting** 33:15
**gray** 27:3
**Green** 1:11
**Grubba** 2:10 6:24
17:19 20:25 21:20
21:23 43:10
**Grubba's** 21:14
**guess** 40:3

---
**H**

**hallway** 32:4 33:7
34:6 38:21
**Halperin** 2:15,17
8:21 18:19,20
20:14 22:23 23:5
33:4
**happened** 33:16
**harm** 4:15 31:14
**HARRIS** 2:6
**hear** 42:11
**heard** 18:19 22:2
32:10 33:3,23
**hearing** 9:19 17:17
36:9,17 37:20 38:5
41:21
**Hello** 28:2
**help** 10:9 31:6
**hidden** 13:18,18
**hired** 4:3,5 25:25
**history** 27:3
**holds** 30:4
**HON** 1:15
**Honor** 3:10 4:14 5:9
8:19 9:5,8 10:14
10:21 11:5,7 12:13
13:11,12 14:6,10
14:20 15:11,14
16:22 17:10,11

18:3,20 21:17,18
22:3,14,21 23:12
24:20 25:15,23
26:20 27:21 28:2
28:21 32:8,11,25
33:4 34:21 35:15
37:24 38:8,20
39:17,18,18,21,25
40:7,21 41:3,19
42:4,14,20 43:9
44:13,14
**Honor's** 23:6 29:19
**hope** 39:15 40:10
41:11
**hopeful** 28:6 32:3
33:9
**Hopefully** 33:20
**hours** 37:6
**House** 1:11
**hugely** 19:9
**hundred** 19:6

---
**I**

**idea** 6:15 31:11
**identified** 20:20
**identify** 43:2
**illicitly** 3:16
**illusory** 17:18 30:14
**immediate** 8:3 27:18
**immediately** 16:11
16:15 17:14 27:8
40:9
**impact** 19:15
**imperative** 36:16
**implement** 35:2
**implemented** 16:11
27:8
**implementing** 18:17
26:17
**importance** 30:21
**important** 18:21
19:9 24:2
**impression** 8:9
20:11 25:4 29:9
**inaccuracies** 11:20

23:10
**inaccurate** 22:8
32:24
**inappropriately**
25:25
**inasmuch** 19:2
**include** 31:18
**includes** 27:17
**including** 12:17,19
37:20
**indicate** 12:22 17:24
39:14
**indicated** 3:14 8:5
18:4 21:12 26:18
27:12 37:2,10
40:13
**indicates** 4:8
**individual** 8:20
28:11
**indulged** 21:4
**information** 6:23
27:19 29:7
**infringing** 18:25
19:23 20:6 28:25
29:22
**injunction** 5:11
23:24 24:12 28:23
28:23 29:20 36:10
39:19 41:5,15,21
42:4,16
**innumerous** 34:16
**input** 41:24
**intend** 14:13 39:14
**intended** 14:4 23:4
31:8
**intent** 13:3
**intention** 14:4,15
41:19
**interest** 3:7 15:25
21:14 26:7
**interestingly** 17:12
**interim** 36:11 37:12
**interpretation** 18:12
18:14 23:6 24:15
**inventory** 8:8,15

20:13 25:6,8
**involved** 20:12
**IP** 8:14
**issue** 3:22 5:17 7:2
7:10,23 9:4,8,16
15:16,16 18:11
19:10,14 21:6 22:7
23:14,22 24:16,24
26:11,14,24,25
29:3,12 30:7 32:16
33:14 35:7 40:13
41:3 42:5
**issued** 11:18 30:23
39:19
**issues** 12:23 26:23
**items** 43:2 44:8

---
**J**

**January** 5:18 12:9
23:25 24:5,13 25:4
26:8
**job** 23:7
**joint** 8:17,25 16:3
21:12 22:5 26:14
28:10 30:22 31:4
32:16,22 33:11
34:19 42:20
**jointly** 21:2
**judge** 1:15 12:19
20:15
**judgment** 12:6 16:8
23:19 41:4,17,23
42:2
**judicial** 40:23

---
**K**

**Kan** 29:25
**key** 5:10 12:23 40:12
**kind** 10:25 13:21
16:2,5
**kinds** 3:20
**Klein** 2:9 20:25
21:20,24 43:10,23
44:2,5,9
**know** 6:17 7:7 9:6

12:15,24 17:16
24:22 36:6,14
38:15
**knows** 12:5 33:13
**K-Line** 4:20 5:7,14
10:15,16 11:17,20
12:11 13:23 14:2
19:6 26:6 28:20
31:2
**K-Linem** 2:9
**K-Line's** 12:3 19:4
20:18 26:4

—————————
**L**
**lack** 11:2 12:23 13:9
18:2 26:12
**Ladies** 27:25
**language** 24:16,17
25:16 32:17
**law** 12:12 33:19
**lawyers** 39:2
**leader** 7:9
**leadership** 4:22
**leave** 5:10
**left** 22:18
**legally** 21:16
**letter** 3:5 11:22
20:18 22:10
**letters** 22:12
**let's** 6:21
**liability** 8:18 9:2
28:10 32:16 33:12
**liable** 21:2 28:16
**license** 6:25 12:7
45:25
**licensing** 7:6
**LIFLAND** 1:15
**light** 30:25
**limited** 8:4,15 18:8
20:3
**line** 4:24 9:5 24:10
**lines** 14:24 21:11
**Lionel** 1:7 2:1,4 3:1
3:11 4:1,4,6,15 5:1
5:17 6:1 7:1,16 8:1

9:1 10:1,16,18
11:1,25 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1,11
19:15 20:1,25 21:1
21:3 22:1 23:1,22
24:1 25:1 26:1,2,2
26:3,5 27:1 28:1
28:20 29:1 30:1
31:1 32:1 33:1
34:1,13 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
**Lionel's** 3:14,16,18
3:25 5:2,3,4 11:18
11:19,24 13:25
19:4,9 26:3 31:21
**list** 10:11 22:12
**lists** 23:23
**little** 18:23 19:8
21:18 29:17
**LLC** 1:7 2:1 3:1 4:1
5:1 6:1 7:1 8:1 9:1
10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
**LLP** 2:3,9,15
**long** 10:11 35:21
**longer** 5:12 36:19
**look** 19:5 33:12
**looking** 7:8 37:7
**looks** 22:14,21
**loophole** 30:9
**lot** 10:2 23:10
**lots** 34:12

**lower** 4:21

—————————
**M**
**M** 2:7,13
**Madison** 2:16
**maintain** 4:21
**making** 4:22 8:2
23:20,21 24:7
28:24 29:20 30:8
41:7
**manifestly** 5:8
**manufacture** 8:11
12:8 18:5 19:19
20:6 29:21 39:23
42:16 44:7
**manufactured** 25:8
30:10
**manufacturing**
18:25 23:14 28:20
28:25 41:8,23
43:18
**mapped** 38:21
**marker** 39:6
**market** 8:11 10:11
18:6 20:7 30:9
**marketplace** 8:10
12:18 15:9 31:4
**markets** 19:5
**Mars** 12:19 13:23
**material** 4:24 7:17
9:4 16:9 18:21
28:17 30:12,21
36:21
**materially** 9:11
12:21
**matter** 1:5 4:11 9:9
10:7
**MDK** 2:9 32:19
43:10
**mean** 11:11
**means** 10:12
**meant** 10:6
**mechanics** 14:17
**mechanism** 9:21
**meeting** 1:13 7:24

9:3 12:23 13:9,15
18:2 19:18 20:7
23:11 24:19,20,24
25:12 26:12
**mention** 6:15 33:21
**mentioned** 34:2
**merely** 36:21
**message** 31:22
**messed** 22:22
**MICHAEL** 2:12
45:4,24
**Microsoft** 7:5
**million** 8:12
**mind** 23:11 24:19
25:13
**minds** 7:24 9:3
12:24 13:9,15 18:2
19:18 20:8 24:21
24:25 26:13
**minimis** 30:6
**minor** 7:10
**minute** 37:4
**minutes** 26:15 28:4
37:7 40:12,17,24
**misappropriation**
13:25
**miscalculate** 37:14
**misimpressions** 31:9
**misleading** 12:21
32:24
**mistake** 15:20
**model** 21:15
**modified** 28:22
**modify** 39:21
**moment** 33:24
**monetary** 22:7
**money** 4:18 20:24
21:3
**monitored** 27:7
**morning** 37:2,4
**motion** 38:10,11,12
38:13
**motions** 38:7
**muted** 38:14
**MYERS** 2:3

**N**

N 2:2 3:2
nature 13:5 30:24
    31:7 33:18 42:12
need 12:24 13:8
    30:12 34:18
needed 17:14
needs 39:4
negative 23:2
negotiating 24:3
never 8:12 34:14
new 1:3,12,12 2:5,5
    2:11,16,16 28:22
    31:17 45:6
newly 30:9
newspaper 10:3
Notary 45:5
note 16:16,17 20:16
    27:14 32:17,18
noted 44:15
notes 30:17
notice 40:23
noticed 22:16
novo 38:16
number 12:3 20:3
    29:10,11,16 43:11

**O**

O 1:14 3:2
objective 3:15
obligation 21:13
obligations 22:6
    28:12,17
obtained 40:5
obviously 33:5
    41:14
occurred 15:7 35:22
offer 4:16 11:9,10
offered 9:23
offers 4:20
okay 21:7 26:20
    27:16
operating 12:2 27:4
    42:6
opportunity 14:9

39:13
orally 9:20
order 3:20 16:10
    31:8,21 34:21,22
    34:23 35:7 37:23
    40:15 41:6 42:22
    42:23
ordered 16:7,10
    22:3 44:11
outline 23:15
outlined 22:17
outset 23:17
overall 10:24
owned 26:5
O'Melveny 2:3 3:5
    17:3

**P**

P 2:2,2,12 3:2
page 21:9,10 22:15
paid 11:24
paper 27:13 32:6
papered 16:15
papering 30:11
    35:19
papers 42:25
paperwork 16:24
    38:3
paragraph 22:14
    23:3
parameters 32:4
    38:23
parenthetically 37:3
part 6:14 8:18,23
    12:11 16:9 17:13
    17:16 20:23 43:5
participant 15:24
particular 35:23
particularly 19:2
parties 11:11 13:4
    24:19 26:13 27:4
    28:7 29:18 30:21
    31:8 36:11 37:15
    37:25 38:23 41:2
    41:24 42:12,17

patents 6:16,17,18
    6:20,22 7:3
pay 5:17
pen 32:6
pending 38:7 41:21
people 19:5 31:18
    33:17 34:16
perceived 32:23
period 8:4 18:8 24:5
    29:14 35:21 37:14
    39:24 41:18 42:8
permanent 5:11
    28:23 41:4
permission 26:3
permitted 10:20
person 12:19 13:23
perspective 18:24
    19:10,22
piece 21:18
Pierson 4:5 6:23
    25:25
place 14:17,22 16:25
    30:19 38:15
placed 11:9,10 15:3
    15:5
plainly 4:7
plaintiff 32:19,24
plaintiff's 24:17
played 13:19
Plaza 2:10
please 18:20 23:13
pledge 8:20
pledging 17:19
point 4:23 5:20,25
    10:3 11:14,15 14:9
    17:23 18:22 19:13
    20:22 24:6 25:23
    28:17,19 29:23
    30:20 31:21 35:23
    41:14,17 43:17
pointed 4:14 39:10
points 7:24 15:2
    20:9,16 22:12
    29:23 32:15 40:8
polarity 35:22

position 4:5 7:8
    10:19 12:25 14:3
    14:11 25:12 34:13
possible 21:16 30:19
    30:23
possibly 25:9 29:5
potential 9:13
precedent 36:2
precise 14:22 15:19
Precision 21:15
    22:18
preliminary 28:22
    36:9 41:21 42:16
prepared 9:19 26:18
    37:15 42:23
press 3:14,22 10:24
    11:17,18,19 12:10
    12:20 13:2,20 15:7
    16:3,5 17:3,5
    22:13,15 23:9
    30:22,25 31:2,19
    32:21,22 33:8 34:3
    34:7,9,16,19 35:3
    35:5,10 38:22 39:3
    42:19,20
pressed 17:14
preventing 19:4
previous 41:6
pre-existing 31:2
price 4:21
prices 4:16
primary 3:15
principal 30:3 43:8
principals 43:8
prior 36:16
probably 25:9 30:20
problem 35:17
problems 17:25
proceed 36:18
proceedings 45:8
product 6:4,7,8 30:6
production 24:10,11
products 5:4,12,15
    5:22 6:2 12:9
    23:21,21,23 24:8,9

7

26:4 29:2,4,8,12
29:22,24 39:23
prohibited 28:24
prohibition 13:16
prohibitions 44:6
promised 30:15
promissory 16:16,17
27:13
properly 20:20
proposal 14:24 44:4
proposals 36:5
proposed 35:5 38:22
proprietary 43:3
provide 29:6
provided 32:19
provision 6:14
public 31:7,22 45:5
publication 15:18
publish 9:24
published 14:24
pulling 19:23
purpose 13:19 26:17
purposes 36:9
pursuant 3:5 5:11
put 7:7 14:17,21
16:5,25 24:17 30:2
32:6 34:13 35:24
36:11
puts 10:25
putting 35:10 36:15
p.m 44:15

**Q**

question 18:13 44:8
questions 34:12,24
quick 32:15
quickly 20:16 30:19
35:25
quite 27:5 35:24

**R**

R 1:14,15 2:2 3:2
4:18,18 45:2
RADLER 2:9
RAICHT 2:15

reach 31:24
read 11:12,16 14:23
23:8,9
reading 3:6
ready 36:18
real 10:7
really 3:24 10:14,18
10:22 14:5 15:3
17:17,19 30:7 36:7
39:12 40:23
reason 16:13 24:2
31:23
reasonable 31:12
reasons 36:15
recall 8:3
receive 17:21,22
receptive 37:22
recess 21:5 27:23
37:4
recite 31:5
recognizing 41:25
record 11:12,13,16
14:23 16:7,10
21:22 22:4,20,24
23:16 25:23 27:23
37:5,19 40:16,18
40:19,20 42:23
44:10
recorded 42:22
rectify 11:21 15:22
reexplanation 35:12
referred 8:22
reflected 32:14
regard 7:2,21 8:25
18:2 28:19 30:11
30:12 31:19 34:15
42:7
reiterated 22:3
relates 7:20
release 3:14,22
10:10,24 11:17,18
11:19 12:20 13:2
13:20 15:7 16:3
17:4 22:14,15 23:9
30:22,25 31:3,4,17

31:18 32:21,22
33:9,15 34:7,9,20
35:3,5,10 38:22
39:3 42:20,20
releaseed 12:10
releases 16:5 31:19
34:3
relief 9:14
remaining 28:7
remember 8:19
renew 38:7
renewed 38:16
report 8:5 28:3
reporter 37:7 45:5
represent 11:6 43:15
request 3:4 37:23
38:10 40:14 41:20
requested 27:19
requesting 3:5
require 35:11
reservation 14:18
resolution 32:7
resolve 26:14
respect 16:8 20:11
27:20,22 38:13
43:17 44:7
respectfully 41:3,20
respects 26:19
respond 23:13
response 11:18
restraining 37:23
40:15
result 15:10
resume 26:16
retraction 9:24 10:2
10:4,13 14:21
15:18 16:2
reviewing 36:4
right 8:6 9:20 12:16
15:2 16:25 22:20
26:6,8,10 28:22
30:12 39:7 42:9
rights 16:20
Rivkin 2:9 22:10
road 7:2

royalty 5:17,24
rule 18:18 26:17
37:11,13 42:7

**S**

S 2:2 3:2
sale 23:14
sales 19:25 26:8,9
Sanda 29:25
satisfied 36:4
saying 15:17 25:18
says 23:18,24 37:5
Scale 21:15
schedule 9:18 36:8
season 19:3
Second 17:24 20:24
28:19
secret 6:22
secretary 22:21
secrets 8:14
security 16:17
see 3:18 11:13 30:12
33:17
seeks 32:22
seen 6:18
sell 5:12,22 8:7 12:8
20:6
selling 23:20,21 24:7
25:20
sells 19:6
sell-off 8:4,15 18:8
29:14 39:24
sense 7:25
set 13:14
settled 42:18
settlement 3:13 4:25
9:10,15 11:12 13:6
13:10 14:14,22
15:25 16:14 17:5
17:13 20:5,11,23
23:16 24:4 28:18
31:16,24 33:5
36:12 38:14 39:12
41:12,16,25 42:18
settling 6:19

severally 21:2
shape 17:6 33:8
short 31:20
shortage 38:25
Shorthand 45:5
show 6:20
showing 17:15
shows 4:9 9:2
side 25:17
sides 16:4 27:5
side-stepping 16:12
similar 10:2
simply 13:7 14:7
    31:5
sitting 37:9
situation 17:18
six 21:11
small 29:10,11
software 4:8
sold 25:10 29:13
somewhat 36:3
    39:11
soon 19:3 30:23
sort 7:10 10:10 35:6
sound 5:16
SOUTHERN 1:3
speak 3:8
specific 10:23 12:6
specifically 4:22
    8:22 23:23 25:16
speed 5:16
spelled 37:17
spend 4:17
spin 5:6 7:4 15:3,4
    16:5
spinning 7:11
spoken 43:14
square 2:4 6:12 9:18
stand 28:12,16
state 3:23 45:6
statement 4:13
    12:20 16:19 18:3
    20:17,20 22:9
    26:14
statements 7:21

32:23
States 1:2,11
step 19:20
stock 8:20 17:19
stomach 37:8
stop 24:7
stores 8:7
story 7:11
stuff 8:12
subject 28:10 34:6
    40:8 42:3,17
subjective 36:3
    37:16 39:11
submit 43:6 44:11
subsequent 21:18
    22:13
substance 36:24
substitute 22:15
Suffice 23:5
suggest 6:3,9
suggested 34:23
suggesting 10:10,14
suggests 5:24 6:6
superior 4:20 5:7
    7:16 10:17
suppose 22:13
supposed 5:2 8:3
    27:14
sure 3:21 4:13 16:24
    28:5 30:8,13 31:8
    33:25 40:3 41:22
surprised 13:21
systems 12:2
—————————
T
T 45:2,2
table 11:9,10 29:17
take 4:4,12 12:25
    35:8,21 40:11,23
taken 3:16 27:24
    40:20
talent 35:9
talk 11:7 31:12 37:3
talked 34:8
talking 15:4 17:5

18:16,17 22:6 30:5
technical 7:13
technology 3:17,18
    3:24,25 4:4,6,16
    4:20 5:3,3,5,7,17
    6:16 7:9,16,22
    9:22 10:16,17
    13:25 16:21 19:4
    23:22 26:2,3,5,7
telephone 43:11
tell 7:15 12:15 14:16
temporary 37:23
    40:15
tenant 3:12
terms 7:17,20 9:17
    10:11,23 11:13,15
    13:13 14:22 15:19
    16:9 21:8 24:23
    28:9 31:5 33:11,16
    37:17
testimony 8:23
Thank 3:9 11:5
    27:16 32:25 35:15
    39:16 44:12,14
thing 27:13 32:20
    33:22 38:19 39:17
things 3:24 5:10
    10:15,24 33:15
    36:5
think 11:14 14:20
    23:3,9 25:14 29:11
    33:6 34:18 42:23
thought 3:13 7:25
    8:17 9:10 10:21
    11:4 18:7,14
three 8:18 43:4
tight 19:8
time 25:5 35:9,21
    38:4,6,7,15 40:23
    41:9 42:3 44:15
Times 2:4
title 26:6
today 16:21 29:20
    31:25 36:7 39:12
    39:25 40:6 41:5,24

42:25
today's 37:21
told 17:18 19:24
tomorrow 29:7
tone 10:25
totally 20:4
trade 3:19 8:13
    34:16
Trains 3:11
transcribed 15:20
    22:20
transcript 13:14
    15:2 21:10 23:8
    45:7
transformer 5:16
transition 24:5
transmission 27:18
trial 14:5 36:17
tried 4:4
TRO 41:20
trouble 35:9
troubled 10:23
troubling 11:3
true 5:8 9:2 10:13
    14:7 19:25 45:7
truly 15:15,16
truth 4:11 10:7
truthfully 34:24
try 6:21 7:7 10:12
    30:18 31:13
trying 7:4 24:23
Ts 41:13
Tuesday 41:6
turns 29:10,15
twist 6:13
two 6:9 7:24 9:13
    20:9,15 32:15
typing 22:11
typo 22:19,24
—————————
U
ultimate 34:19
ultimately 39:3
uncommon 8:13
undermined 9:12

understand 14:13
    38:9 42:10 43:24
understanding
    21:21 32:5 36:5
    40:4 41:2
understood 13:4,5
    16:9
undisputed 4:11
undue 31:13
unexpressed 14:18
ungarnished 4:10
Uniondale 2:11
unit 29:7
United 1:2,11
unrepentant 10:25
upgrade 6:5,11
upgraded 6:8
upgrades 6:4,11
use 6:11 35:4
uses 19:4
utilized 14:2

_____
V
_____
vacate 13:9
vacated 9:17
value 19:11,12
various 20:2
VERSICHELLI
    2:12
version 19:9
versions 4:6 6:8
    11:25
view 25:18 27:2
    30:20 31:22 35:22
    37:9
vitiate 20:4

_____
W
_____
want 12:14 14:12
    18:19 20:9 26:23
    32:9,14 33:2 40:3
    41:10,22
wanted 11:21 20:16
    38:20
warehouse 29:25

wasn't 4:5 9:3 10:5
    13:24 15:21 17:20
way 5:21 17:6 18:22
Wednesday 36:10
    37:13 39:6
week 19:17 36:10
    37:12,21 39:6,19
went 21:18
weren't 9:6 17:17
    25:6
we're 31:19 35:18
    42:6
WILLIAMS 45:4
    45:24
willing 3:19 17:2
wish 9:6 42:4
wished 43:12
witnesses 36:17,18
    39:2
wondering 37:8
words 22:22 23:15
    25:19 28:12 33:11
    37:16 41:22
work 10:3 17:2 25:5
    27:7 30:22 32:13
    32:22 40:9
worked 25:16 28:7
    28:13 32:4
working 6:4 20:12
    27:15 31:20 42:17
world 3:16,21 4:23
    7:12,15 34:10
wouldn't 18:8 41:16
write 9:8
wrong 7:12 11:3
    13:24 22:7,8 40:2

_____
X
_____
x 1:4,9
XIO1991 45:25

_____
Y
_____
year 19:8
years 4:17 8:12
York 1:3,12,12 2:5,5

2:11,16,16 45:6

_____
$
_____
$700,000 22:7

_____
0
_____
04-17324 1:7

_____
1
_____
1:25 44:15
10-day 37:13 42:7
10004 1:12
10022 2:16
10036 2:5
11 22:15
11th 3:6
11556 2:11
15 1:10

_____
2
_____
2 22:15
2005 1:10 25:9
2006 5:18 23:25 24:6
    24:13 25:5 26:9

_____
3
_____
31 5:18 21:10 23:25
    24:6,13 26:8
31st 12:9

_____
5
_____
555 2:16

_____
6
_____
65 18:18 26:17 37:11
    37:13 42:7

_____
7
_____
7 2:4